## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BRETT MICHAEL SANDERS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:15-CV-02782-D** |
| **LIEUTENANT MIKE VINCENT,** | § | |
| **OFFICER T. BAGLEY, OFFICER** | § | |
| **B. JONES,** | § | |
| **and the TOWN OF ADDISON** | § | |
| **Defendants.** | § | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Brett Michael. Sanders ["Mr. Sanders"], complaining of Defendants, Lieutenant Mike Vincent ["Lt Vincent"], Officer T. Bagley ["Officer Bagley"], Officer B. Jones ["Officer Jones"] and the Town of Addison ["Addison"], hereby files Plaintiff's First Amended Original Complaint and Jury Demand and respectfully shows the following:

### I.     NATURE OF THE ACTION

1.     This is a civil rights action for declaratory relief and damages arising under the Constitution and laws of the United States. Mr. Sanders was lawfully exercising his First Amendment rights under the Constitution by using his video camera to observe and videotape activity of the Town of Addison Police Department from a public sidewalk in daylight hours and in plain view, without interfering with traffic or with any activities of Addison Police Department. This was not a crime. Nonetheless, Defendant Officers treated Mr. Sanders as if it were. Defendant Officers harassed, detained, assaulted, seized and arrested Mr. Sanders without reasonable suspicion or probable cause merely because Mr. Sanders was lawfully exercising his

1

First Amendment rights by using his video camera to observe and videotape activity of the Addison Police Department.

## II.    DEMAND FOR JURY TRIAL

2.    Plaintiff demands a trial by jury.

## III.    PARTIES

3.    Mr. Sanders, an individual, is a citizen and adult resident of Texas, U.S.A.

4.    Defendant Lieutenant Mike Vincent is an individual citizen and adult resident of Texas and at all relevant times was employed by the Town of Addison as a Police Lieutenant. He is sued in his individual capacity and can be served with Summons at his work address at the Town of Addison Police Department, 4799 Airport Pkwy, Addison, TX 75001-3321.

5.    Defendant Officer T. Bagley, Badge No. 179, is an individual citizen and adult resident of Texas and at all relevant times was employed by the Town of Addison as a Police Officer. He is sued in his individual capacity and can be served with Summons at his work address at the Town of Addison Police Department, 4799 Airport Pkwy, Addison, TX 75001-3321.

6.    Defendant Officer B. Jones, Badge No. 176, is an individual citizen and adult resident of Texas and at all relevant times was employed by the Town of Addison as a Police Officer. He is sued in his individual capacity and can be served with Summons at his work address at the Town of Addison Police Department, 4799 Airport Pkwy, Addison, TX 75001-3321.

7.    Defendant Town of Addison is an incorporated city and political subdivision of the State of Texas and manages, directs, and controls the Addison Police Department, which employs Defendants Vincent, Bagley and Jones. Service of Summons upon Defendant Town of Addison may be had by serving the City Secretary, Chelsea N Gonzalez, at 5300 Belt Line Rd., Addison, Texas 75254-7606.

2

## IV.   JURISDICTION

8.      This action to vindicate Plaintiff's rights protected by the First, Fourth and Fourteenth Amendments to the U.S. Constitution is brought under 42 U.S.C. §§1983 and 1988. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 and 1343(a) (3) and (4). This Court also has jurisdiction under 28 U.S.C. §§2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

## IV.   VENUE

9.      Venue is proper under 28 U.S.C. §1391(b) because one or more Defendants reside in the Northern District of Texas.

10.     Venue is also proper under 28 U.S.C. §1391(b) because all of the events or omissions giving rise to the claims occurred in the Northern District of Texas.

## V.   FACTS

### A.   INTRODUCTION

11.     Mr. Sanders is employed as an "Enterprise Content Management Consultant" in which he manages a document management server farm and provides technical solutions for a large energy company. Photography and videography are hobbies of Mr. Sanders.

12.     Mr. Sanders decided to audit police use of seat belts with his video camera.

13.     On June 25, 2015 around approximately 12:30 – 12:45 p.m., Mr. Sanders went to the Addison Police Department and was standing on the sidewalk across the street (15900 Addison Road) from Addison Police Department using his video camera on a tripod in broad daylight to videotape police cars as they left the parking lot to see if officers were wearing their seat belts.

14.     Mr. Sanders was not violating any laws and was not acting suspiciously or furtively, as he was standing on the sidewalk in plain view wearing shorts and a T-shirt and a cap and had

camera equipment in a backpack on his back. Mr. Sanders also had a pre-1899 black powder pistol on him that was unloaded and legal to open carry in Texas in accordance with §46.01 of the Texas Penal Code.  The pistol was in a holster in plain view outside his clothing with his T-shirt tucked inside the holster/pistol handle so it could readily be seen by all.

15.     Further, Mr. Sanders was not interfering with traffic or with any activities of Addison Police Department.

16.     Mr. Sanders was simply exercising his clearly established First Amendment rights to observe and videotape the routine activities of Addison Police Department.

**B.     POLICE HARRASSMENT AND DETENTION**

17.     At all times relevant to the acts alleged in this complaint, Defendants Lieutenant Vincent, Officer Bagley and Officer Jones were acting under the color of the statutes, ordinances, regulations, customs, and usages of Defendant Town of Addison and the State of Texas and under the authority of their respective offices as police lieutenant and police officers.

18.     While he was videotaping, Mr. Sanders observed and videotaped Officer Bagley walk across the street and under color of law as a police officer immediately start taking steps to chill Mr. Sanders' exercise of his First Amendment rights.

19.     Officer Bagley walked up to Mr. Sanders and said "Can I help you sir?" and then again said "Can I help you?"

20.     Mr. Sanders said: "Not really."

21.     Officer Bagley then said "Ok can you continue to move on then. You don't need to be over here videoing the police department for any reason, unless you have a reason to be videoing."

22.     Mr. Sanders replied: "I've got a reason."

23.     Officer Bagley then said: "What's your reason sir? I've already asked you that?"

24.     Mr. Sanders then said: "I don't need to tell you."

25.     Officer Bagley then said: "You don't need to tell me? Ok can you move on then? You have your ID right quick?"

26.     Mr. Sanders said: "Yes sir."

27.     Officer Bagley then said: "Can I see your Id?"

28.     Mr. Sanders answered: "No."

29.     Officer Bagley then said "Sir I've got you under detention right now, okay."

30.     Mr. Sanders said "What's your?"

31.     Officer Bagley then said: "For failing to show me your ID you're gonna get in trouble."

32.     Mr. Sanders was saying "whoa whoa whoa."

33.     Officer Bagley said "Do me a favor."

34.     Mr. Sanders said: "You do know the Texas law right? I have to be under arrest to show ID."

35.     Officer Bagley then said: "You're under detention right now, okay."

36.     Mr. Sanders asked: "For what crime?"

37.     Officer Bagley answered "Investigation," and then called on his radio "730 send me another unit over here."

38.     After calling on his radio, Officer Bagley said "Do me a favor."

39.     Mr. Sanders replied "Sir, you're operating outside of your authority."

40.     Officer Bagley responded "But you have no authority to set here and video the police department, okay."

41.     Mr. Sanders replied "Yes I do."

42.     Officer Bagley then asked: "What's the authority?"

43.     Mr. Sanders said "Sir?"

44.     Officer Bagley asked again: "What's the authority that you have videoing us?"

45.     Mr. Sanders then said: "I'm going to remain silent."

46.     Officer Bagley then said: "Okay that's fine. Go ahead and present your ID to me if you don't mind, please sir."

47.     Mr. Sanders replied: "What crime have I committed?"

48.     Officer Sanders then said: "Sir I've asked you nicely to hand me your ID okay."

49.     Mr. Sanders then said: "Can you articulate what crime I've committed?"

50.     While Mr. Sanders said this, Officer Bagley received a call on his radio and responded to his radio stating: "I'm right across the street. I'm wanting to believe it's the individual who was with the "Sh", with the last word unclear on the recording.

51.     Officer Bagley stood there a few seconds, and Mr. Sanders said: "Can you articulate what crime I've committed?"

52.     Officer Bagley said: "Sir. "Right now when you're videoing us like that, like this, it makes us nervous, okay."

53.     Mr. Sanders said: "Why are you nervous?"

54.     Officer Bagley replied: "So I'm contacting you because I don't know what you're videoing us for? I don't know if you're plotting to do something to the police department or something like that."

55.     Mr. Sanders said: "You know what makes me nervous?"

6

56.     Ignoring Mr. Sanders question, Officer Bagley continued saying: "So I'm asking you nicely, I'm asking you nicely for your ID because you are being detained. By being detained, you have to provide me the information I ask for."

57.     Mr. Sanders replied: "That's incorrect, but why am I being detained?"

58.     Officer Bagley responded: "Sir go ahead and provide me your information."

59.     Mr. Sanders once again asked "Sir, why am I being detained?"

60.     Officer Bagley said: "huuh, My goodness."

61.     Mr. Sanders then said: "I just need."

62.     Officer Bagley interrupted Mr. Sanders and said: "I just told you why."

63.     Mr. Sanders then said: "I just need reasonable and articulable suspicion that I've committed a crime."

64.     Officer Bagley said three more times while Mr. Sanders was speaking: "I just told you why."

65.     Officer Bagley then proceeded to say; "It's suspicious activity that you're doing videoing the police department. I don't know that you're doing something to plot something against the police department okay. So right now you're being detained okay, and by that I'm asking you for your identification so I can identify who you are sir, okay."

66.     Mr. Sanders then said: "You're going to need to tell me what crime I've committed or you suspect me of committing."

67.     Officer Bagley then said: "Right now what you are doing is violating a policy that you should not be doing this okay."

68.     Officer Bagley then stepped over and started touching Mr. Sanders as if to feel for his wallet and said: "Do you have, where's your ID?"

7

69.     Mr. Sanders said: "Don't touch me."

70.     Officer Bagley took a step back and said: "Okay. Where's your ID? If you'll go ahead and provide me with your information. If you, wait listen to me."

71.     Mr. Sanders started saying: "I'm not operating."

72.     Officer Bagley then said: "Failing to provide me with your information, I will place you under arrest."

73.     Mr. Sanders replied: "Sir, I'm not driving a motor vehicle."

74.     Officer Bagley then said: "Do you. Do you. It has nothing to do with a motor vehicle. I just told you why I'm contacting you. So you are being detained. You are not under arrest at this moment, you are being detained."

75.     Mr. Sanders then said: "I'm going to reach for," but before he could finish, Officer Bagley said: "So I've asked you nicely for your information."

76.     Mr. Sanders then said: "I'm going to reach for my cell phone."

77.     Officer Bagley replied: "No, you reach for your identification."

78.     Mr. Sanders again said: "I'm reaching for my cell phone now."

79.     Officer Bagley replied: "You're not using your cell phone" and Officer Bagley appeared to try to grab Mr. Sander's cell phone and again said: "You're not going to use your cell phone."

80.     Mr. Sanders said: "Whoa, Don't touch my camera."

81.     Officer Bagley then said: "I don't know that you're calling somebody to come over here."

82.     Mr. Sanders said: "What's your name and badge number?"

83.     Officer Bagley replied: "My name is Officer Bagley, 179. It's on your video camera. Do me a favor, I asked you for."

84.     While he was saying this, Mr. Sanders was taking out his cellphone to connect his camera to the internet to broadcast the officer's actions.

85.     Officer Bagley said: "Sir, you're not using your phone, you're not using your phone cause I don't know that you're calling somebody over here to do something to me. Okay."

86.     Mr. Sanders said: "I have no ill will," and Mr. Sanders had taken no aggressive actions of any type and had made no threats or threatening gestures but had merely been conversing with Officer Bagley at Officer Bagley's insistence.

87.     Despite no violence or threats on the part of Mr. Sanders and no basis for such statement based on any actions or words of Mr. Sanders, Officer Bagley then said: "For officer safety, I'm asking you one more time."

88.     Since Mr. Sanders had been informed that he was not under arrest and had only been requested by Officer Bagley not to use his phone and had not been informed that if he attempted to use his phone that Officer Bagley would use force against him, Mr. Sanders again said: "I have no ill will" and continued to attempt to connect his camera to the internet with his cell phone.

## C.     POLICE ASSAULT AND ARREST

89.     Instead of telling Mr. Sanders that he was **ordered** not to use his phone or telling Mr. Sanders that if he used his phone Officer Bagley would be forced to use violence against him, Officer Bagley suddenly performed a leg sweep on Mr. Sanders and took him to the ground knocking Mr. Sanders' cell phone out of his grasp and injuring Mr. Sanders' leg.

90.     At this point in time, Officer Bagley, per his own report, had not even observed that Mr. Sanders was openly carrying the legal and unloaded pre-1899 black powder pistol.

91.     Officer Bagley then got on top of Mr. Sanders and handcuffed him and called on his radio for backup.

92.     Being just across the street from the police headquarters, other officers came across the street to the scene almost immediately after Mr. Sanders was handcuffed, including Lieutenant Vincent and Officer Jones and others.

93.     Upon information and belief, upon arrival of Lieutenant Vincent and Officer Jones, Officer Bagley did not report to them any criminal conduct or articulable objective facts of any reasonably suspicious conduct of Mr. Sanders that would merit the continued seizure, detention and arrest by said officers.

94.     Nonetheless, when they arrived, Lieutenant Vincent and Officer Jones continued the illegal public seizure, detention and arrest of Mr. Sanders on the sidewalk for all to observe.

95.     Lieutenant Vincent kept Mr. Sanders in handcuffs for approximately twenty more minutes and Officer Jones kept his hands on Mr. Sanders the entire time holding him.

96.     Upon information and belief, during the time that they were holding Mr. Sanders, at least one other police officer was telephoning someone to "determine" if they had any legal basis to continue with the arrest of Mr. Sanders.

97.     Upon information and belief, it was a policy, practice, or procedure, written or unwritten, of the Addison Police Department that a person could not videotape police officers or the Addison Police Department, either approved by or condoned by silence by the Chief of Police as a policy maker.

98.     Upon information and belief, it was a policy, practice or procedure of the Addison Police Department, written or unwritten, that videotaping the police constituted "suspicious behavior", either approved by or condoned by silence by the Chief of Police as a policy maker.

10

99.    Alternatively, upon information and belief, Addison Police Department had no policy whatsoever with regards to a person's First Amendment Rights regarding observing and videotaping the police and had not trained Officer Bagley and Lieutenant Vincent and Officer Jones about the First Amendment rights to videotape police activities at work or that they could not detain a person without reasonable suspicion, based upon articulable objective facts, to believe that person was engaged in or had engaged in criminal conduct and could not arrest someone merely for his refusal to provide identification.

100.    While holding Mr. Sanders in handcuffs, Lieutenant Vincent lectured Mr. Sanders about the police's "problems" with Mr. Sanders' activity.

101.    During the entire time that Mr. Sanders was handcuffed and held in custody, he was on the public sidewalk or right beside the sidewalk in plain view during daylight hours for all persons driving by to observe.

102.    Mr. Sanders had to suffer the humiliation of being handcuffed and held in custody by multiple police officers as if he were a common criminal.

103.    Officer Bagley made a written report with an assigned report number of 15-3005. The report contains no articulable objective facts that would justify an initial detention, much less subsequently physically seizing and handcuffing Mr. Sanders. With regard to the initial detention, the only alleged facts about Mr. Sanders in the report were that Mr. Sanders was "a W/M across the street wearing a black T-shirt, khaki shorts, a black back pack on his back and a digital camera on a tripod focused on the police department." (quoted from Report 15-3005) The reasons in the report for the initial detention of Mr. Sanders were that "Bagley was contacted by several off duty Addison Police officers out of uniform doing training in the rear parking lot advising there was a W/M across the street taking video and making them nervous." (quoted

from Report 15-3005) There is no fact in the report that reasonably indicates Mr. Sanders had engaged in, was engaged in or was about to engage in criminal conduct of any type whatsoever at the time of Mr. Sanders' initial detention.

104.    The report made by Officer Bagley completely omits the fact that Officer Bagley told Mr. Sanders multiple times that he was going to arrest Mr. Sanders if Mr. Sanders did not give him his identification.

105.    The report does not contain any articulable objective facts that would support the subsequent physical seizure and handcuffing of Mr. Sanders after his initial detention. For example, the report -

    a.    does not state that Mr. Sanders committed any aggressive or violent acts,

    b.    does not state that Mr. Sanders made any threats to the safety of Officer Bagley or anyone,

    c.    does not state that Mr. Sanders attempted to flee or acted nervous in any way, and

    d.    does not state that Officer Bagley observed Mr. Sanders commit any type of criminal activity.

106.    The report clearly shows that the entire detention, physical seizure and handcuffing occurred merely due to the subjective fears of some of the police officers of the videotaping and the subjective fear of Officer Bagley of what he did not know:

    a.    "Bagley advised him with the way things are going right at this time, Bagley did not know if he was plotting to do something to the police station like blow it up or do something else." (quoted from Report 15-3005) and

    b.    "Bagley became worried the cell phone might have been linked to something in the back pack which could cause harm to both parties." (quoted from Report 15-3005)

The report further falsely attempts to make it appear that Mr. Sanders was "hiding" from Officer Bagley the pre-1899 black powder pistol that Mr. Sanders was openly carrying for all to see.

107. Officer Bagley told Mr. Sanders that he was being detained for "investigation" but Officer Bagley never even bothered to ask Mr. Sanders if he had any weapons on him, what he had in his backpack, or any other questions that remotely indicate Officer Bagley was actually conducting any type of investigation of any crime. The only questions that Officer Bagley asked Mr. Sanders, other than for Mr. Sanders' identification, reflect that the real reason was to stop Mr. Sanders from videotaping: Officer Bagley asked what Mr. Sanders' reason was for videotaping and what Mr. Sanders' authority was for videotaping.

108. No actions of Mr. Sanders would have provided a reasonable officer with reason to believe that the officer had legal cause to detain Mr. Sanders, seize Mr. Sanders with force and arrest Mr. Sanders by placing him in handcuffs.

109. Upon information and belief, Lieutenant Vincent and Officer Jones had no information in the form of articulable objective facts that would have allowed a reasonable officer to continue the detention, seizure and arrest of Mr. Sanders.

## VII. ACTION AGAINST ALL DEFENDANTS UNDER 42 U.S.C. §1983 FOR VIOLATIONS OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS

110. Mr. Sanders adopts by reference the information in paragraphs 1-109 as if fully set forth.

111. Observing public police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is expressive conduct protected by the First Amendment.

112. This First Amendment right to gather information includes the right to record actions of police, subject to reasonable time, place, and manner restrictions.

113.    In this instance, Mr. Sanders was standing on a public sidewalk videotaping apparently normal activities of the police during broad daylight from across the street, which activity is protected by the First Amendment to the United States Constitution.

114.    Mr. Sanders was not engaged in any unlawful activity or interfering with the duties of public police activities.

115.    None of Mr. Sanders' activities were being conducted in an unreasonable time, place or manner.

116.    It is apparent from the videotape and the statements made by Officer Bagley that the entire incident was started and caused, in whole or in part, by Addison Police Department and Officer Bagley's attempts to illegally "chill" Mr. Sanders' exercise of his First Amendment rights.

117.    Defendants Lieutenant Vincent, Officer Bagley and Officer Jones, acting under color of law, deprived Plaintiff of certain constitutionally protected rights as follows:

    a.      Defendants Lieutenant Vincent, Officer Bagley and Officer Jones deprived Mr. Sanders of his constitutional rights under the First Amendment to videotape the activities of the Addison Police Department by harassing, detaining, seizing and arresting Mr. Sanders.

    b.      Officer Bagley deprived Mr. Sanders of his constitutional rights under the Fourth and Fourteenth Amendments by unlawfully detaining Mr. Sanders and demanding to see his identification without reasonable suspicion to believe that Mr. Sanders was engaged in or had engaged in any criminal conduct and on the alleged grounds that Mr. Sanders was violating a "policy" of the Town of Addison;

      c.      Officer Bagley deprived Mr. Sanders of his constitutional rights under the Fourth and Fourteenth Amendments by unlawfully and unreasonably physically seizing Mr. Sanders using excessive force by taking Mr. Sanders to the ground with a leg sweep and arresting Mr. Sanders by placing handcuffs on him without probable cause, without a warrant, without consent, and without exigent circumstances; and

      d.      Lieutenant Vincent and Officer Jones deprived Mr. Sanders of his constitutional rights under the Fourth and Fourteenth Amendments by continuing the unlawful detention, seizure and arrest in public view in broad daylight for another twenty minutes without reasonable suspicion to believe that Mr. Sanders was engaged in or had engaged in any criminal conduct and without probable cause, without a warrant, without consent, and without exigent circumstances.

118.    Defendants Vincent, Bagley and Jones acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Sanders' exercise of his clearly established rights protected by the First Amendment, Fourth Amendment and Fourteenth Amendment to the U.S. Constitution.

119.    As a direct and proximate result of the Defendants' Vincent, Bagley and Jones' unlawful detention, seizure, and arrest, Mr. Sanders sustained physical injuries. In addition, Mr. Sanders sustained damages for pain and suffering, mental anguish, and other damages as pled herein.

120.    Defendant Addison is responsible for the violations of Mr. Sanders' constitutional rights because the Defendant Officers' actions resulted from Addison's deliberate indifference to policies and procedures of providing for First Amendment rights and for allowing officers to retaliate against individuals for their expressive conduct in videotaping police undertaking their official duties and/or a deliberate indifferent failure to train, supervise, and discipline officers who engage in such conduct.

121.    Defendant Addison should have established policies and procedures for its Police Department in line with the established law as to whether a person can be arrested for failure to provide his identification in accordance with Texas law and the decision by the United States Supreme Court more than thirty five years ago in *Brown v. Texas*, 443 U.S. 47 (1979).

122.    In establishing these procedures or in failing to establish proper procedures, Addison had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing to effect policies and procedures that created a substantial likelihood that citizens would be subjected to unlawful detention, seizures of their person, and arrest by Addison's Police Department officers for failure to provide their identification.

123.    Defendant Addison should have established policies and procedures for its Police Department in line with the established law as to whether a person can be harassed, detained, seized, and arrested merely for videotaping Addison Police Department when the person is not interfering with any activities of the Addison Police Department.

124.    In establishing these policies and procedures, Addison had a duty under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing to effect policies and procedures that created a substantial likelihood that citizens would be subjected to unlawful harassment, detention, seizure, and arrest of their person by Addison's Police Department officers merely for exercise of their First Amendment rights.

125.    Notwithstanding its mentioned duties, Defendant Addison (by and through its policy maker, the Chief of Police) was (upon information and belief) guilty of one or more of the following wrongful acts or omissions in violation of Mr. Sanders' constitutional rights, in that it:

a.      Established an unconstitutional policy, practice or procedure that individuals could not exercise their First Amendment rights by filming or videotaping Addison police department or Addison police officers;

b.      Alternatively failed to establish appropriate policies and procedures to address and protect the proper exercise of the First Amendment rights by individual citizens;

c.      Failed to establish adequate policies and procedures regarding whether a person can be detained, seized, and arrested merely for failing to provide his identification;

d.      Failed to adequately train and supervise its police officers regarding the foregoing; and

e.      Upon information and belief, at the time of the events in question, Defendant Addison had failed to give its officers appropriate policies, rules and limitations on the wrongful interference with the exercise of the First Amendment rights of a person in order to give Addison and its officers unfettered authority and "plausible denial" in the event that the unreasonable and unlawful demand to see the identification of a person was questioned.

126.    As a direct and proximate result of one or more of Defendant Addison's wrongful acts or omissions, Plaintiff sustained violations of his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

127.    As a direct and proximate result of the Defendant Addison's actions, Mr. Sanders sustained minor physical injury from illegal detention, seizure and arrest. Further, Mr. Sanders suffered damages for pain and suffering, mental anguish, and other damages as pled herein.

## VIII.   LACK OF QUALIFIED IMMUNITY

128.    Mr. Sanders adopts by reference the information in paragraphs 1-127 as if fully set forth.

17

129.    Defendants Officer Bagley, Lieutenant Vincent and Officer Jones did not observe Mr. Sanders engage in any criminal conduct and had no reasonable suspicion based upon articulable objective facts or probable cause to believe that Mr. Sanders had committed, was committing, or was about to commit any criminal conduct.

130.    Mr. Sanders was merely videotaping the police at work which was protected by the First Amendment to the U.S. Constitution.

131.    Mr. Sanders' purported violation of a "policy that he should not be doing this [videotaping the police]" and the police's unfounded fears that Mr. Sanders' videotaping made them nervous provide no basis for Officer Bagley's detention and subsequent use of force to effect the seizure and arrest of Mr. Sanders and no basis for Lieutenant Vincent and Officer Jones continued detention, seizure, and arrest of Mr. Sanders after their arrival upon the scene.

132.    Mr. Sanders was nonviolent at all times and made no threats to the safety of Officer Bagley or others at any time prior to the illegal acts of Defendants.

133.    Defendants Officer Bagley, Lieutenant Vincent and Officer Jones actions violated "clearly established statutory and constitutional rights of which a reasonable officer would have known."

134.    No reasonable officer confronting a situation where the officer had not observed a person engage in any criminal conduct and had no reasonable suspicion to believe that a person was engaging in or had engaged in criminal conduct and where the need for any force was clearly absent would have concluded that detaining Mr. Sanders, physically seizing Mr. Sanders and deploying any force under such circumstances was reasonable, and therefore Defendants Officer Bagley, Lieutenant Vincent and Officer Jones should not be entitled to any protection of Qualified Immunity to avoid accountability in this case.

18

## IX. DAMAGES AND ATTORNEY'S FEES

135. Mr. Sanders adopts by reference the facts and allegations set forth in paragraphs 1-134 as though fully set forth herein.

136. As a direct and proximate result of Defendants' unlawful actions, Mr. Sanders suffered deprivations of his constitutional rights guaranteed by the First, Fourth and Fourteenth Amendments of the United States Constitution.

137. Mr. Sanders incurred damages for loss of reputation, shame, embarrassment, humiliation, mental anguish, pain and suffering, and such other compensatory and tangible consequential damages as the law entitles Plaintiff to recover.

138. Mr. Sanders seeks punitive damages against Defendants Lieutenant Vincent, Officer Bagley and Officer Jones for their intentional, willful and wanton acts completely ignoring "clearly established statutory and constitutional rights of which a reasonable person would have known."

139. Mr. Sanders hereby sues for these damages, and prays for just and fair recovery thereof.

140. Mr. Sanders is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## X. PRAYER FOR RELIEF

141. For the foregoing reasons, Plaintiff respectfully requests judgment for the following and asks the Court to:

  a. Enter a declaratory judgment that Defendants violated Plaintiff's First Amendment rights to observe and videotape police activity;

  b. Enter a declaratory judgment that Defendants violated Plaintiff's Fourth/ Fourteenth Amendment rights to be free from unreasonable seizure/arrest without probable cause;

      c.      Award compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

      d.      Alternatively award nominal damages for violations of Plaintiff's civil rights;

      e.      Award punitive damages against the individual Defendants;

      f.      Award costs, expenses, and counsel fees pursuant to 42 U.S.C. § 1988(b); and

      g.      Enter such other relief as this honorable Court may deem just and deserving.

DATED this 9th day of November 2015.

Respectfully submitted,

By: s/ Kervyn B. Altaffer Jr.
Kervyn B. Altaffer Jr.
State Bar No. 01116575
Law Office of Kervyn B. Altaffer Jr.
4054 McKinney Ave Ste 310
Dallas, TX 75204
Tel: 972-234-3633
Fax: 972-947-3663
Email: kervyn@altafferlaw.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Electronic Case Filing System for the Northern District of Texas and electronic notice of this filing was given to counsel for Defendants via the ECF System.

By: s/ Kervyn B. Altaffer Jr.