**IN THE UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRETT MICHAEL SANDERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:15-CV-02782-D** |
| **VS.** | § | |
| | § | |
| **LIEUTENANT MIKE VINCENT, et al,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S AMENDED RESPONSE AND BRIEF IN RESPONSE TO DEFENDANTS'**
**SECOND MOTION & BRIEF TO DISMISS AND PLAINTIFF'S ALTERNATIVE**
**CONDITIONAL MOTION TO CONDUCT DISCOVERY AND AMEND**

KERVYN B. ALTAFFER, JR.
State Bar No. 01116575
ALTAFFER & CHEN PLLC
4054 McKinney Ave., Ste. 310
Dallas, TX  75204
Tel (972) 234-3633
Fax (972) 947-3663
kervyn@altafferlaw.com
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document was electronically filed with the Electronic Case Filing System for the Northern District of Texas and electronic notice of this filing was given to counsel for Defendants via the ECF System.

By: s/ Kervyn B. Altaffer Jr.

# TABLE OF CONTENTS

I.     Introduction                                                                                          1.

II.    Standard of Review for 12(B) (6) Motion                                               3.

III.   Summary of Argument                                                                        4.

IV.    Plaintiff Alleged (Sufficient) Facts That Plausibly Give Rise to          5.
       an Entitlement to Relief

       A.  Facts Plead                                                                                  5.

       B.  First Amendment                                                                           6.

            1.  Clearly Established Law                                                             6.

            2.  Plaintiff's Plausible Claims                                                       8.

       C.  Fourth and Fourteenth Amendments                                             10.

            1.  Plaintiff's Seizure (detention) was Illegal at its Inception       10.

            2.  Defendant Officer Bagley's Excessive Use of Force                  17.

            3.  Plaintiff's Continued Seizure by the Other Individual Defendants   18.

V.     Claims against the Town of Addison Adequately Plead                       19.

       A.  Plaintiff Adequately Alleged that the Police Chief was a Policy Maker   20.

       B.  Plaintiff Adequately Alleged Claims that Addison was Liable and Did Not Allege
            that Addison was Liable under Theories of Negligence or Respondeat Superior   21.

VI.    The Individual Defendants are Not Entitled to Qualified Immunity and the Court does
       Not need to Order Plaintiff to Reply Pursuant to Fed. R. Civ. Proc. 7(a)   23.

VII.   Plaintiff's Alternative Conditional Motion to Conduct Discovery and Amend   24.

VIII.  Conclusion                                                                                      24.

## <u>TABLE OF AUTHORITIES</u>

*Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012)…………………8

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011)…………………………..23

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)………………………………………3, 4

*Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)…………………………………………………..9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………………………3

*Buehler v. City of Austin et al*, No. A-13-CV-1100 ML, 2015 U.S…………………………6, 7, 8
Dist. Lexis 20878 (W.D. Tex. Feb. 20, 2015)

*Buehler v. City of Austin et al*, No. A-13-CV-1100 ML (W.D. Tex. July 24, 2014)………7, 8 and
Addendum A (Dkt 26)

*Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)……………………………………………18

*Brown v. Texas*, 443 U.S. 47, (1979)……………………………………………………………16

*Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543, T.D. 3686
(1925)……23

*City of Canton v. Harris*, 489 U.S. 378 (1989)………………………………………………..20

*Curry v. State*, No. 06-14-00142-CR (Tex. App.—Texarkana, 2015)…………………………..15

*Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992)………………………………………..7

*Fernandez v. California,* 134 S.Ct.1126, 1132, 188 L.Ed.2d 25 (2014)………………………...23

*Florida v. Bostick,* 501 U.S. 429, 437 (1991)…………………………………………………16

*Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)………………………………...8

*Glik v. Cunniffe*, 655 F.3d 78, 82, 85 (1st Cir. 2011)…………………………………………..8

*Graham v. Connor*, 490 U.S. 386 (1989)………………………………………………………..15

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)…………………………………..19

*Gros v. City of Grand Prairie*, 181 F.3d 613, 616 (5th Cir. 1999)……………………………20

*Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014)………………………………………………18

*Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 124 S.Ct. 2451,
    159 L.Ed.2d 292 (2004)……………………………………………………………11, 15, 16

*Illinois v. Wardlow,* 528 U.S. 119, 124-125 (2000)…………………………………...............16

*INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)………………………...11

*James by James v. Sadler*, 909 F.2d 834 (5th Cir. 1990)…………………………………………...19

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)………………………………………………...4

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)…………..................10

*Keenan v. Tejeda,* 290 F.3d 252, 259 (5th Cir. 2002)…………………………………………...7, 8, 9

*Kellerman v Askew*, 541 F.2d 1089 (5th Cir. 1976)……………………………………………20

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)…….. 3, 4

*Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989)…………………………………………………...19

*Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928 (8th Cir. 2012)…………………20

*Monell v. Dept of Soc. Servs.*, 436 U.S. 658, (1978)…………………………………………………19

*Morgan  v. Swanson*,  659  F.3d  359 (5th Cir. 2011) (en banc)…………………….…………23

*New Jersey v. T.L.O.*, 469 U.S.325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)……………………23

Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992)…………………………………………20

*Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008)…………………………………………...18

*Reichle v. Howard*, 132 S.Ct. 2088 (2012)………………………………………………………..7

*Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999)…………………………………………19

*Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)………………………………..8

*Smith v. Plati,* 258 F.3d 1167, 1176 (10th Cir. 2001)………………………………………………..9

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)……………..……………...10

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015)………………………………………………………23

*United States v. Alvarado-Zarza*, 782 F.3d 246 (5th Cir. 2015)…………………………………14

*United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)………………...11

*United States v. Ashley*, 3:14-cr-255 (United States District Court,
     N.D. Texas, Dallas Division, January 16, 2015)………………………………………...14

*United States v. Hill,* 752 F.3d 1029 (5th Cir. 2014) ………….2, 8, 10, 11, 12, 13, 14, 15, 16, 18

*United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005)…………………………………………8

*United States v. Jordan,* 232 F.3d 447, 448 (5th Cir. 2000)……………………………………...10

*United States v. Mask*, 330 F.3d 330 (5th Cir. 2003)…………………………………………….8

*United States v. Michelletti*, 13 F.3d 838 (5th Cir. 1994) (en banc)…………………………10, 11

*United States v. Sanders,* 994 F.2d 200 (5th Cir. 1993)…………………………….………...10

*United States v. Tookes*, 633 F.2d 712 (5th Cir. 1980)……………………………..…………10

*Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988)………………..………………...19

22 U.S.C. §2201………………………………………………………………………………...3

22 U.S.C. §2202………………………………………………………………………………...3

42 U.S.C. §1983…………………………………………………………………3, 4, 10, 19, 20 note 5

42 U.S.C. §1988………………………………………………………………………………...3

Texas Penal Code § 38.02 (a)…………………………………………………….…………...16

Texas Penal Code § 38.02 (a) (amended) …………………………………………..………...15

Town of Addison City Ordinances, Ord. No. 009-023, § 1.A., 8-11-09……………......4, 20, 21

IN THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRETT MICHAEL SANDERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:15-CV-02782-D** |
| **VS.** | § | |
| | § | |
| **LIEUTENANT MIKE VINCENT, et al,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S AMENDED RESPONSE AND BRIEF IN RESPONSE TO DEFENDANTS'
SECOND MOTION & BRIEF TO DISMISS AND PLAINTIFF'S ALTERNATIVE
CONDITIONAL MOTION TO CONDUCT DISCOVERY AND AMEND**

Plaintiff Brett Michael Sanders hereby files Plaintiff's Amended Response and Brief In Response to Defendants' Second Motion To Dismiss & Brief To Dismiss.

## I.    Introduction

Videotaping the police is not a crime![1] Plaintiff, Brett Michael Sanders, an amateur photographer with an interest in the activities of the police which he often recorded and broadcast to the public, decided he wanted to conduct an audit to see if Addison police officers wore their seat belts when they drove out of the police parking lot. (*Plaintiff's First Amended Original Complaint And Jury Demand,* hereafter "Plaintiff's Complaint or "Dkt 17"). On the morning of June 25, 2015 nearing noon, Mr. Sanders drove to the Addison Police Department

---

[1] There is no general legislation against taking photos or videos. Laws that limit (none apply in this case) photography are mostly about the subject of the photo and not about the act by itself of taking photos. For instance there are statutes that make taking photos of naked people illegal without their consent (voyeurism laws). There are laws made to protect the concept of *property* from being stolen, whether a persons' image (privacy) or a person's work (copyright), or an entity's reputation (trademark). Neither the Patriot Act nor the Homeland Security Act has provisions that restrict photography in general. However, commanders of military installations can prohibit photographs of specific areas when they deem it necessary to protect national security. Government entities like the U.S. Department of Energy can forbid photographs of infrastructure they consider would be a risk to expose.

1

headquarters and set up his video camera on a tripod on a public sidewalk in plain view across the street from the police headquarters and facing the parking lot exit to record officers as they drove out of the parking lot. Mr. Sanders was not interfering with traffic or any police activities. Mr. Sanders was not violating any laws, criminal or civil, and was legally videotaping the police and public events occurring in the open and not behind any closed doors or in any hidden place. With no knowledge of any specific and articulable objective facts upon which to base a reasonable suspicion that Mr. Sanders had committed, was committing, or was about to commit any criminal conduct, Defendant Officer Bagley detained Plaintiff and then with no reason forcefully took Plaintiff to the ground and handcuffed him, while the only thing Plaintiff had been doing was videotaping the police and attempting to broadcast the video on the internet with his cell phone. The other Defendants did not just stand by when they arrived but they themselves continued the forceful seizure of Plaintiff and prevention of him from videotaping.

**"The government attempts to put an ominous gloss on what appears almost entirely ordinary."[2]** In *Defendants' Second Motion & Brief To Dismiss* (hereafter "Defendants' Motion" or "Dkt 21"), Defendants contend that they had "reasonable suspicion" to seize Plaintiff based upon violence directed at police in other cities and even in other states. However, Defendants do not show or even allege that Plaintiff was connected with such violent events in any manner, directly or indirectly. Further Defendants contend that their reasonable suspicion is also based Plaintiff's refusal to identify himself and upon a fact - that Plaintiff had on him an unloaded antique firearm that was legal to open carry - that Defendants did not even have knowledge of or discover until after the inception of Plaintiff's seizure. Plaintiff shows, pursuant to the Fifth Circuit decision in *United States v. Hill,* 752 F.3d 1029, 1034 (5th Cir. 2014) and Supreme Court

---

[2] *United States v. Hill,* 752 F.3d 1029, 1034 (5th Cir. 2014) (emphasis added).

authority, that such evidence does not establish reasonable suspicion and the after discovered evidence cannot even be considered.

Plaintiff sued Defendants under 42 U.S.C. §§1983 and 1988 for violations of Plaintiff's Constitutional rights under the First, Fourth, and Fourteenth Amendments and under 28 U.S.C. §§2201 and 2202 for a declaration of Plaintiff's rights.

Plaintiff recorded all the conversation between Plaintiff and Defendant Officer Bagley up until the time that Plaintiff was forcefully taken down by Defendant Officer Bagley, and the recording is the best evidence of many of the facts plead by Plaintiff; in addition, the recording clearly and unequivocally refutes some of the pleadings by Defendants and some of the denials of Defendants. Therefore, if the Court is inclined to grant Defendants' Motion To Dismiss, Plaintiff requests leave to conduct discovery, and then to amend Plaintiff's pleadings and to present the recording to the Court to review before the Court grants Defendants' Motion To Dismiss.

Plaintiff does not agree with Defendants' statement and characterization in B. Summary of Plaintiff's Allegations (Dkt 21, pp. 8-10). Plaintiff objects to the anecdotal statements/evidence supplied by Defendants' counsel (Dkt 21: page 8, note 2; p. 9 – the part in italics) as improper sidebar remarks not appearing in Defendants' Factual Assertions of Immunity.

## II.       Standard Of Review For 12(B)(6) Motion

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Iqbal*,

556 U.S. at 679 (2009).  When reviewing a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court must "accept[] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  The plaintiff's complaint need not contain detailed factual allegations, but "[its] obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1964-65 (quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (quotations, citations, and footnote omitted).

## III.        Summary Of Argument

Plaintiff has plead sufficient facts that together plausibly give Plaintiff an entitlement to relief under 42 U.S.C. §1983 for violation of Plaintiff's constitutional rights under both the First and Fourth Amendments.  The initial seizure of Plaintiff was not based upon reasonable suspicion, and Defendants have not shown specific and articulable objective facts, even with their additional "new facts'" that Defendants' contend are part of the totality of the relevant circumstances, that meet Defendants' burden to point out specific articulable facts warranting suspicion of criminal activity. Plaintiff  has sufficiently identified the Chief of Police as a policy maker of the Town of Addison because the Code of Ordinances of the Town of Addison states the following: "The chief of police … has promulgated and shall continue to promulgate policies, procedures, rules, directives and orders for the administration of the department, …." Although Plaintiff cannot at this time without discovery identify a specific policy, Defendant

Officer Bagley informed Plaintiff that Plaintiff's actions in videotaping the Addison police activities were barred by "policy." A municipality may be sued for lack of having a sufficient policy to prevent violations of a person's Constitutional rights, as well as for having an invalid policy. The individual Defendants' claims of qualified immunity fail as a matter of law because Plaintiff's claims are based on clearly established law at the time of the events and Defendants have not (and cannot) pointed to specific and articulable objective facts that could have lead them to reasonably suspect that Plaintiff had committed, was committing, or was about to commit, a crime, considering the totality of the circumstances. Finally, if the Court determines that Plaintiff's pleadings are deficient in any respect, Plaintiff requests that any dismissal be without prejudice and that the Court grant Plaintiff leave to amend his pleadings in conformity with the Court's ruling.

### IV.      Plaintiff Alleged (Sufficient) Facts That Plausibly Give Rise To an Entitlement to Relief

**A.      Facts Plead**

Plaintiff alleged that he was videotaping the Town of Addison Police headquarters parking lot and the activities of Addison Police Officers on June 25, 2015 at approximately 12:30 – 12:45 p.m. in broad daylight for the purpose of seeing if the police officers were wearing their seat belts when they exited the parking lot. (Dkt 17 p. 3, ll. 13). Further, Plaintiff alleged that he was not breaking any laws, was not acting suspiciously or furtively, was videotaping from a public sidewalk, was wearing shorts, a T-shirt, a cap, and had camera equipment in a backpack. (Dkt 17 p. 3-4, ll. 13-15). Plaintiff alleged that he was not interfering with any activities of Addison Police Department or with traffic. (Dkt 17 p. 4, ll. 15). Plaintiff further alleged that when Addison Police Officer Defendant Bagley walked across the street from the Addison Police headquarters building to where Plaintiff was on the sidewalk videotaping, Officer Bagley

5

immediately told Plaintiff that he needed to move on and did not need to be videotaping the police department. (Dkt 17 p. 4, ll. 21).  After Officer Bagley asked Plaintiff if he had a reason to be videotaping and Plaintiff informed him that he did but Plaintiff would not tell Officer Bagley the reason, Officer Bagley once again informed Plaintiff that he should move on.  (Dkt 17 pp. 4-5, ll. 21-25).

When Plaintiff refused to move on, Officer Bagley asked to see Plaintiff's ID and Plaintiff refused. (Dkt 17 p. 4, ll. 27-28). When Plaintiff refused to produce his ID, Officer Bagley immediately told Plaintiff that he was detained and then a few second later unequivocally again informed Plaintiff that he was detained. (Dkt 17 p. 5, ll. 29 and 35). Defendant Officer Bagley seized Plaintiff and the only thing that Plaintiff had been doing was legally videotaping public activities of the Addison Police Department and police officers. Officer Bagley told Plaintiff that the videotaping made the police officers nervous. (Dkt 17 p. 6, ll. 52). When Plaintiff asked Officer Bagley what crime Officer Bagley suspected Plaintiff of committing, Officer Bagley responded that videotaping was violating a "**policy**" that Plaintiff should not be doing this (videotaping the police). (Dkt 17 p. 7, ll. 66-67). Officer Bagley continued with the seizure of Plaintiff, telling Plaintiff that he would be arrested if he did not identify himself. (Dkt 17 p. 8, l. 72).  After Plaintiff continued to refuse to identify himself and took out his cell phone to connect his camera to the internet, Officer Bagley exerted gratuitous unnecessary physical force taking Plaintiff down to the ground, injuring Plaintiff, and handcuffed Plaintiff, thereby effectively arresting Plaintiff. (Dkt 17 pp. 9-10, ll. 86-90). When Lieutenant Vincent and Officer Jones arrived at the scene and they took over physically holding Plaintiff and kept him in handcuffs for another twenty minutes, all the while preventing Plaintiff from videotaping. (Dkt 17 pp. 9-10, ll. 86-90).

**B.      First Amendment**

**1.      Clearly Established Law**

The recent Texas case *Buehler v. City of Austin et al*, No. A-13-CV- 1100 ML, 2015 U.S. Dist. Lexis 20878 (W.D. Tex. Feb. 20, 2015) held that in this circuit there was a clearly established right under the First Amendment to videotape the police in the performance of their duties. *See Keenan v. Tejeda,* 290 F.3d 252, 259 (5th Cir. 2002) (retaliation for First Amendment exercise is unconstitutional); *Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992) (arrest for photographing police raid where claimant did not interfere was unconstitutional).   In its earlier order on motions to dismiss, the *Buehler* court extensively briefed First Amendment law including the relevant precedents in the 5th Circuit on whether a First Amendment claim existed and whether it was a clearly established rule of law at the time of the events in question. A copy of the order on the motions to dismiss, *Buehler v. City of Austin et al*, No. A-13-CV-1100 ML (W.D. Tex. July 24, 2014) (order denying motions to dismiss) has already been filed as Addendum A to Plaintiff's Response (Dkt 26) for the Court's reference (pages 9 to 21). The court ruled the following in the order:

- "In sum, based on foundational principles of First Amendment law, the Court concludes that the First Amendment protects the right to videotape police officers in the performance of their official duties, subject to reasonable time, place, and manner restrictions." *Buehler*, No. A-13-CV- 1100 ML, order at 14.

- "In light of the existing Fifth Circuit precedent and the robust consensus among circuit courts of appeals, the Court concludes that the right to photograph and videotape police officers as they perform their official duties was clearly established

at the time of Buehler's arrests [August and September 2012]." *Buehler*, No. A-13-CV- 1100 ML, order at 20.

In *Buehler v. City of Austin et al*, No. A-13-CV-1100 ML (W.D. Tex. July 24, 2014)(Addendum A), the court notes that the following circuit courts have concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions: *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012) (invalidating a state eavesdropping statute as applied to the recording of police officers in the performance of their duties in traditional public fora); *Glik v. Cunniffe*, 655 F.3d 78, 82, 85 (1st Cir. 2011) (holding that there is "a constitutionally protected right to videotape police carrying out their duties in public" and that the right was clearly established; noting the "fundamental and virtually self-evident nature of the First Amendment's protections in this area"); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (recognizing a First Amendment right to photograph or videotape police conduct); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a "First Amendment right to film matters of public interest"; the plaintiff was filming the activities of police officers at a protest).

As the Court found in *Buehler*, Plaintiff's First Amendment claims in this case are based on a clearly established rule of law.

### 2.    Plaintiff's Plausible Claims

In order to have a First Amendment claim, Plaintiff must show three things: "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the

plaintiffs' exercise of constitutionally protected conduct."   *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002).

With regard to the first requirement, Plaintiff plead that he was video-taping the police station and activities of the police, a constitutionally protected activity as shown above.

With regard to the second requirement, the Court must consider the law on what constitutes an injury in a First Amendment Case. "[A] tort to be actionable requires injury," which, in this context, is the deprivation of a constitutional right." *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)). The question is "whether a person of ordinary firmness would have been deterred by these ominous events from [continuing to video-tape the police]." *Keenan*, 290 F.3d at 259. The answer is "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)). "The focus . . . is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Keenan*, 290 F.3d at 259 (quoting *Smith v. Plati,* 258 F.3d 1167, 1176 (10th Cir. 2001)).

Plaintiff plead, with regard to Defendant Bagley that Plaintiff was immediately detained and was told that he was not supposed to be videotaping pursuant to "policy".  Subsequently while Plaintiff was already detained, Defendant Bagley forcefully took Plaintiff to the ground and handcuffed Plaintiff and Plaintiff's camera was knocked aside and Plaintiff was prevented from continuing to videotape. Defendant Bagley then continued to hold Plaintiff in handcuffs until Defendants Vincent and Jones arrived. Defendants Vincent and Jones took over from Officer Bagley and continued to physically hold Plaintiff and kept him in handcuffs even after Defendant Bagley left the scene. Defendants Vincent and Jones continued to hold Plaintiff at

their will, not giving his camera back and preventing him from videotaping for some twenty more minutes.

Finally with regard to the third requirement, the only activity that Plaintiff was engaged in was video-taping at the time of the events. While the Defendants contend that their actions were not taken because of Plaintiff's videotaping, at a minimum the facts plead by Plaintiff are sufficient to create a fact issue on whether the Defendants, in taking their actions against Plaintiff, were motivated by Plaintiff's videotaping the police station and activities.

Contrary to Defendants' Motion To Dismiss, *Reichle v. Howard*, 132 S.Ct. 2088 (2012) is inapplicable because Plaintiff does not contend that he was prosecuted by court action. However, the facts plead by Plaintiff show there was clearly no probable cause to seize Plaintiff or to arrest him. Based upon the clearly established law and the facts plead by Plaintiff regarding his First Amendment claims, the Court should deny Defendants' Motion To Dismiss Plaintiff's First Amendment claims.

**B.      Violation of Fourth and Fourteenth Amendments**

**1.      Plaintiff's Seizure (detention) was Illegal at its Inception**

Plaintiff has asserted a claim under 42 U.S.C. §1983 that he was illegally seized (detained) without a warrant in violation of his Constitutional right to be free from unreasonable seizure pursuant to the Fourth and Fourteenth Amendments.

> Warrantless searches and seizures are "per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). The rule of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), represents "a very narrow exception." *United States v. Tookes*, 633 F.2d 712, 715 (5th Cir. 1980).

> Under *Terry*, if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer may briefly detain--that is, "seize" --the

10

person to investigate. *United States v. Jordan,* 232 F.3d 447, 448 (5th Cir. 2000) (discussing *Terry).* "Such a belief must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'" *United States v. Sanders,* 994 F.2d 200, 203 (5th Cir. 1993); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). In determining whether the officer's suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered. *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). **The government has the burden of proving the specific and articulable facts that support the reasonableness of the suspicion. *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005)**.

As an initial matter, because **a "seizure" under the Fourth Amendment must be "justified at its inception**, "we must determine when Hill was seized within the meaning of the amendment. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). A seizure begins when "all the circumstances surrounding the incident" are such that "a reasonable person would have believed that he was not free to leave." *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (citation omitted); *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003).

*United States v. Hill,* 752 F.3d 1029, 1033 (5th Cir. 2014) (emphasis added).

Shortly after he arrived on the scene, within a few minutes, Defendant Officer Bagley twice unequivocally told Plaintiff that Plaintiff was detained, thus establishing the inception of Plaintiff's seizure. (Dkt 17, p. 5, ll. 29 and 35). Plaintiff alleged facts that establish exactly what he was doing (videotaping Addison police) at the time of inception of his seizure, that show the location and time of his seizure, that show the location was in plain view, that show Plaintiff was not interfering with traffic or any police activities, and that show the clothing Plaintiff was wearing and the equipment he had with him. (Dkt 17, pp. 3-4, ll. 11-16).  Plaintiff alleged that he was seized without a warrant. (Dkt 17, p. 15, ll. 117c. and 117d.).   Plaintiff plead that at the time of his initial "seizure" (detention) by Defendant Officer Bagley, Officer Bagley was still unaware that Plaintiff was openly carrying a pistol and did not become aware of it until after he took down Plaintiff forcefully with a leg sweep. (Dkt 17, pp. 5-9 leading up to the specific allegation on p. 9, l. 90). Defendants admit that Defendant Officer Bagley did not immediately notice that

Plaintiff was wearing a handgun. (Dkt 21, p. 26, par. 3.05; Dkt, 22, p. 4, l. "1.21").  Assuming all such facts plead by Plaintiff are true, when combined such facts are sufficient to plausibly give rise to an entitlement to relief by Plaintiff for Defendants' violation of the Fourth and Fourteenth Amendments.

In an attempt to show specific and articulable objective facts that would support a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime, Defendants plead "new" facts not in Plaintiff's Complaint. Plaintiff disputes some of such facts. However, for purposes of Defendants' Motion To Dismiss, even if the Court accepts such "new" facts, Plaintiff contends that Defendants' have still not met their burden to show "specific and articulable objective facts that support a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime."

Defendants' allegations that Defendants had "reasonable suspicion" to seize Plaintiff are best addressed initially by explaining, just as the Court did in *United States v. Hill*, "**the sorts of circumstances the government [Defendants in this case] did *not* show**." *Hill*, 752 F.3d at 1034 (emphasis added). Just as in *Hill,* the Defendants in this case have not alleged facts to show any of the following: that Defendants were responding to any report of criminal activity; that Defendants had any particular reason to think that crime was happening there where Plaintiff was engaged in the activity of videotaping at the moment of Defendants' arrival; that the Plaintiff matched the description of anyone sought by the police; or that Defendants had a "hunch" that Plaintiff might be involved in criminal activity and then observed him for a "sufficient time to determine that criminal activity indeed reasonably appeared to be afoot." *Hill,* 752 F.3d at 1034. Just as in *Hill*, Defendants do not show any facts that Plaintiff made any suspicious movements or that Plaintiff verbally threatened Defendants or anyone or that Plaintiff made any threatening

gestures in the few seconds or minutes before Defendant Officer Bagley told Plaintiff that he was

detained. *Hill*, 752 F.3d at 1034. However, unlike in *Hill*, Defendants in this case do not even

allege any facts that tend to show that the location of Plaintiff's activities was a "high crime"

area or that Plaintiff's activities were being conducted at an unusual time or place or manner.

Defendants have not offered any facts to show and have not even contended that Plaintiff

attempted to flee when Defendant Officer Bagley approached him or when Plaintiff was told he

was detained. Defendants have not offered any facts to show that Plaintiff appeared unusually

nervous.

In attempting to establish the "totality of the circumstances," Defendants, similar to the

government in *Hill,* 752 F.3d at 1035, have alleged facts that Defendants claim show that crimes

were committed and directed at a police station in the city of Dallas and at a public building in

the city of Garland, other cities in the same county (Dallas County) as Addison. (Dkt 21, pp. 6,

18, 26).  Defendants would also have the Court consider an alleged incident occurring not in the

same city, not in the same county, and not even in the same state, but in California on December

2, 2015, more than five months after the events in this case. (Dkt 21, p. 18, note 6).  However,

just as in *Hill*, Defendants have not shown any facts to connect these crimes, directly or

indirectly to Plaintiff in any way. *Hill,* 752 F.3d at 1035. The Fifth Circuit found that such

evidence "tells us almost nothing about whether the police had reasonable suspicion to seize

[Plaintiff Sanders] at one [location], in one single town within the county." *Hill,* 752 F.3d at

1035.

In *Hill*, the Fifth Circuit found that the government did not satisfy its burden to point out

specific articulable facts warranting suspicion of criminal activity. *Hill,* 752 F.3d at 1038.

Although the officers were not required to show that they suspected a particular criminal act,

they must show that they actually suspected criminal activity. *See Hill*, 752 F.3d at 1033 ("[L]aw enforcement [must] point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or about to commit, a crime."). As in *Hill,* Defendants' have not shown any specific and articulable facts that would lead a reasonable officer to suspect that Plaintiff herein was committing or about to commit any crime.

Just as with Plaintiff in this case, the police officers in *Hill* found a firearm on Hill's person after the initial seizure of Hill. *Hill,* 752 F.3d at 1030. Hill's possession of the firearm was clearly illegal because Hill had been convicted of a felony and Hill was arrested and charged with illegal possession of a firearm and ammunition. *Hill,* 752 F.3d at 1030. Unlike in *Hill*, Plaintiff in this case was not charged with any illegal possession of his firearm and Plaintiff was not in possession of any ammunition. (Dkt 21, p. 27, par. "3.10"). The Court stated that the fact that Hill might have been armed and dangerous could not even be considered in determining reasonable suspicion to seize Hill because Hill's firearm was not discovered by the police until after the initial seizure of Hill (similar to Plaintiff's antique pistol in this case). *Hill,* 752 F.3d at 1031 and at 1039, note 9.

The facts in *United States v. Hill* have numerous and substantial parallels to the facts before this Court in this case. However, Defendants failed to bring to the Court's attention *Hill* and other recent cases in this circuit and this district [3] with some similar substantial facts supporting a denial of the government's claim to "reasonable suspicion." Instead, Defendants argued their claims that there was "reasonable suspicion" based upon a Sixth Circuit case and a district court case from Michigan, both of which had substantial dissimilar key facts. (Dkt 21, pp.

---

[3] *United States v. Alvarado-Zarza*, 782 F.3d 246 (5th Cir. 2015) (no reasonable suspicion based upon police officer's mistake of law); *United States v. Ashley*, 3:14-cr-255 (United States District Court, N.D. Texas, Dallas Division, January 16, 2015 (no reasonable suspicion based upon similar factors considered by the Fifth Circuit in *United States v. Hill,* 752 F.3d 1029 (5th Cir. 2014)).

15-18). In both cases relied upon and argued by Defendants, prior to seizing the plaintiffs, the law enforcement officers had received reports from civilian witnesses that the plaintiffs were armed and appeared dangerous. (Dkt 21, p. 16). The law enforcement officers seized (detained) the plaintiffs to determine whether the possession of the weapons was legal and whether the plaintiffs posed a threat. (Dkt 21, pp. 15-17).  Unlike both of those cases and instead just like in *United States v. Hill*, in the case before this Court, Defendant law enforcement officers were not even aware that Plaintiff Sanders had a firearm in his possession until after the time of inception of Plaintiff Sander's initial seizure and also were not even aware of it until after Defendant Officer Bagley forcefully took down Plaintiff Sanders with a leg sweep to handcuff him. (See paragraph IV. A. Facts Plead herein and Dkt 17).

Defendants also argue, or at least imply, that Plaintiff's failure or refusal to identify himself  constituted a refusal to cooperate and thus a basis to seize Plaintiff and arrest Plaintiff, citing the Michigan case and *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004). (Dkt 21, pp. 17-18, p. 26).  Only a few seconds after arriving at the scene, Defendant Officer Bagley asked Plaintiff for Plaintiff's ID, and, when Plaintiff told Defendant he could not see Plaintiff's ID, Defendant immediately told Plaintiff that he was detained. (Dkt 17, p. 5, ll. 27-29 and 35). Further, after seizing Plaintiff by telling him that he was detained, Defendant Officer Bagley told Plaintiff that Officer Bagley was going to arrest Plaintiff if Plaintiff did not provide his information (identify himself) (Dkt 17, p. 8, l. 72).

Texas law does not currently, and did not at the time Plaintiff Sanders was seized, require a person to identify himself unless and until after the person has been "lawfully arrested." Texas Penal Code §38.02 (a) (Vernon's 2011). Said statute was amended in 1987 to so state. *Curry v. State*, No. 06-14-00142-CR (Tex. App. – Texarkana 2015).

15

However, even before the amendment, it had been clearly established law since 1979 that before a police officer may seize (stop) an individual and demand the individual to identify himself, that officer must have at least reasonable suspicion, supported by specific and articulable objective facts, to believe that the individual had been or was about to be involved in criminal activity. *See Brown v. Texas*, 443 U.S. 47, 50-52 (1979). In 1979 when *Brown* was decided, the Texas Penal Code required a person to identify himself even when just stopped as follows:

§ 38.02. Failure to Identify as Witness
(a) A person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information.

*Brown*, 443 U.S. at 54, note 1. The Supreme Court found that the application of the statute to require the appellant to identify himself when stopped violated the Fourth Amendment because at the time the officers stopped the appellant, the officers lacked any reasonable suspicion, supported by specific and articulable facts, to believe appellant was engaged in or had engaged in criminal conduct. *Brown*, 443 U.S. at 52, 53.

Contrary to Defendants' argument, contention or insinuation, *Hiibel* does not support a seizure of Plaintiff Sanders, or a continuation of a seizure, for failure to cooperate by refusing to identify himself; in *Hiibel,* the issue was whether a state with a "stop and identify statute" (which Texas had at the time of *Brown* but not at the time of *Hiibel*) could lawfully arrest a person **after** the person had been stopped pursuant to the requirement in *Brown* that "that the initial stop [must be] based on specific, objective facts establishing reasonable suspicion to believe the suspect was involved in criminal activity." *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 180-184 (2004). *Hiibel* started after *Brown* left off and did not change the decision in *Brown v. Texas. Hiibel*, 542 U.S. at 184. Further, in a Terry stop, individuals have a right to ignore the police, and

"any refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Illinois v. Wardlow,* 528 U.S. 119, 124-125 (2000) (quoting *Florida v. Bostick,* 501 U.S. 429, 437 (1991)).

Based upon Defendants' Motion To Dismiss and Defendants' Answer, including the "new facts" alleged by Defendants in both (which Plaintiff does admit are true), Defendants have not met their burden to show specific and articulable objective facts that support a reasonable suspicion, at the inception of Plaintiff's initial seizure, that Plaintiff had committed, was committing, or was about to commit a crime.

### 2.      Defendant Officer Bagley's Use of Force in his Leg Sweep was Excessive

Plaintiff alleged facts that show, at the time that Defendant Officer Bagley forcefully took Plaintiff to the ground with a leg sweep, Plaintiff had already been seized (when Bagley told Plaintiff multiple times that he was officially detained) and no further force was necessary because after that Plaintiff :

1.      Did not commit any aggressive or violent acts (Dkt 17 p. 9 l. 86, p. 12, l. 105);

2.      Did not make any threats to Officer Bagley or anyone else (Dkt 17 p. 9 l. 86, p. 12, l. 105);

3.      Did not attempt to flee or act nervous in any way (Dkt 17 p. 12, l. 105);

4.      Did not commit any type of criminal activity (Dkt 17 p. 3, l. 14);

5.      Was never told that he was suspected of any specific crime  (DKT 17, pp. 4-13) ;

6.      Was told by Officer Bagley that he would be arrested if he did not identify himself (even though failure to identify was not a crime)  (Dkt 17 p. 8, l. 72);

7.      Was not warned in any manner or requested to allow himself to be handcuffed (Dkt 17 p. 9, l. 89); and

8.       Was injured by the takedown (Dkt 17 p. 9, l. 89).

To establish an excessive force claim, [Plaintiff] must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)). To gauge the reasonableness of the force used, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We ask whether the Officers' actions were objectively reasonable at the time rather than from "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. **It is clearly established that use of gratuitous force against a detainee who has been subdued and restrained is unreasonable.** *Bush*, 513 F.3d at 501–02.

Based upon the legal considerations above and the facts plead by Plaintiff, Plaintiff has plead sufficient facts to support a claim that there was no force necessary and therefore the leg sweep would constitute a gratuitous force  and was unreasonable per se. In addition, since there was no reasonable suspicion at the inception of the seizure, the force in doing the leg sweep quite a while after the inception of the seizure would be unreasonable per se also.

**3.       Plaintiff's Continued Seizure (detention/arrest) after the Other Individual Defendants Arrived Violated Plaintiff's Rights under the Fourth and Fourteenth Amendments**

Due to the fact that Plaintiff's seizure at the inception was not based upon reasonable suspicion, any continued seizure, even based upon facts discovered after the inception such as possession by Plaintiff of a (legal) weapon, would be illegal. *United States v. Hill,* 752 F.3d 1029

(5th Cir. 2014).  Defendants Vincent and Jones were not mere bystanders, but participated in the illegal seizure by continuing to keep Plaintiff handcuffed and physically hold Plaintiff after Defendant Bagley left the scene (Dkt 17 p. 10, ll. 93-96), and as such both are also liable for the continuation of the illegal seizure of Plaintiff. *James by James v. Sadler*, 909 F.2d 834 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989).

## V.      Claims Against the Town of Addison Adequately Plead

Plaintiff was informed by Defendant Officer Bagley that what Plaintiff was doing in videotaping the police activities was violating a "policy that he should not be doing it." (Dkt 17 p. 7, ll. 66-67).  Such a policy would be per se unconstitutional. Plaintiff and his counsel could not locate any such policy on the website of the Town of Addison or the Addison Police Department.  If the Addison Police Department does have such a policy as stated by Officer Bagley, it could fit into anyone of the theories of liability alleged by Plaintiff against the Town of Addison. If the Town of Addison does not have such a policy in the police department, then Plaintiff's alternative pleadings that Addison lacks such a policy (as mentioned in paragraph b. in this section) would be a valid claim.

Under 42 U.S.C. §1983, a municipality may be sued under *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978) (holding that municipal corporations may be named in a Section 1983 lawsuit) based upon the following, amongst other claims:

1.      an unconstitutional officially adopted or promulgated policy;

2.      a custom or practice that is not written or formally adopted, but that is a pervasive, longstanding practice that has the force of law[4];

---

[4] *See, e.g.,* Gregory v. City of Louisville, 444 F.3d 725, 754 (6th Cir. 2006) (alleged custom of using overly suggestive show-ups); Sharp v. City of Houston, 164 F.3d 923, 936 (5th Cir. 1999) (finding a custom existed for transfers and demotion when officers reported misconduct); Watson v. City of Kansas

3.      a failure to have a valid policy resulting in a constitutional deprivation by a city

employee where the city has a duty to have a valid policy to prevent such deprivation[5]; and

4.      a failure to train.[6]

**A.      Plaintiff adequately alleged that the Police Chief was a policy maker**

Notwithstanding the claims in Defendants' Motion that there is no basis for naming the

Police Chief as a policy maker in this case, a district court should consider local law, amongst

other items, in determining which city official had final policymaking authority over the policies

at issue in this case. *Gros v. City of Grand Prairie*, 181 F.3d 613, 616 (5th Cir. 1999).

Plaintiff alleged that the Police Chief is a policy maker based upon the City Ordinances

of the Town of Addison (located at the internet website address -

https://www.municode.com/library/tx/addison/codes/code_of_ordinances?nodeId=PTIICOOR_C

H50LAEN) of which this Court may take judicial notice of as a matter of public record. *Miller v.*

*Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928, 931 and note 3 (8th Cir. 2012).

Addison City Ordinances state the following:

**Chapter 50 - LAW ENFORCEMENT**

• ARTICLE I. - IN GENERAL

**Sec. 50-1. - Police department; jurisdiction.**

**The police department of the town, heretofore provided for and existing, is**
**affirmed, the head of which is the chief of police.** The police department is and shall
continue to be composed of the chief of police and other officers and employees as the
city council may provide. …

---

City, 857 F.2d 690, 696 (10th Cir. 1988) (finding a sufficient showing of the police department's custom
for treating domestic violence cases lightly).
[5] City of Canton v. Harris, 489 U.S. 378 (1989). Kellerman v Askew, 541 F.2d 1089 (5th Cir. 1976). *See,*
*e.g.*, Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992) ("[T]he decision not to take any action to
alleviate the problem of detecting missed arraignments constitutes a policy for purposes of § 1983
municipal liability.")
[6] City of Canton v. Harris, 489 U.S. 378 (1989).

(Ord. No. 009-023, § 1.A., 8-11-09)

**Sec. 50-3. - Chief of police.**

(a)  The police department of the town consists and shall continue to consist of the chief of police and such members of the department as the city council may provide.

(b) The chief of police has been and shall continue to be appointed and subject to removal by the city manager.

(c) **The chief of police** has carried and shall continue to carry out the functions of the police department relating to: public safety and enforcement of ordinances, state and federal laws; the organization the police department of the town in conformity with the laws of the state and ordinances of the town; and **has promulgated and shall continue to promulgate policies, procedures, rules, directives and orders for the administration of the department, including, but not limited to, discipline within the department.**

(Ord. No. 009-023, § 1.A., 8-11-09) (emphasis added in Sec 50-1 and Sec 50-3 (c))

Thus the city ordinance names the position of Chief of Police, as the "policy maker".

Further, at the time this suit was filed, the website for the City of Addison listed the Chief of Police at the time, Paul Spencer, as only "Acting Chief of Police." A website related to the Town of Addison (http://blog-addisontx.info/2016/01/posts/addison-appoints-paul-spencer-police-chief) now states that Paul Spencer was appointed the Chief of Police on January 8, 2016, well after this suit was filed and after the amended complaint was filed. If the court finds that it is insufficient to name the position of chief of police, Plaintiff requests leave to amend to name Paul Spencer as a "policy maker."

**B.     Plaintiff adequately alleged claims that Addison was liable and did not allege that Addison was liable under theories of Negligence or Respondeat Superior**

Plaintiff alleged a number of alternative claims for liability against the Town of Addison as follows:

120.     Defendant Addison is responsible for the violations of Mr. Sanders' constitutional rights because the Defendant Officers' actions resulted from Addison's deliberate indifference to policies and procedures of providing for First Amendment rights and for

21

allowing officers to retaliate against individuals for their expressive conduct in videotaping police undertaking their official duties and/or a deliberate indifferent failure to train, supervise, and discipline officers who engage in such conduct.

121.    Defendant Addison should have established policies and procedures for its Police Department in line with the established law as to whether a person can be arrested for failure to provide his identification in accordance with Texas law and the decision by the United States Supreme Court more than thirty five years ago in *Brown v. Texas*, 443 U.S. 47 (1979).

122.    In establishing these procedures or in failing to establish proper procedures, Addison had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing to effect policies and procedures that created a substantial likelihood that citizens would be subjected to unlawful detention, seizures of their person, and arrest by Addison's Police Department officers for failure to provide their identification.

123.    Defendant Addison should have established policies and procedures for its Police Department in line with the established law as to whether a person can be harassed, detained, seized, and arrested merely for videotaping Addison Police Department when the person is not interfering with any activities of the Addison Police Department.

124.    In establishing these policies and procedures, Addison had a duty under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing to effect policies and procedures that created a substantial likelihood that citizens would be subjected to unlawful harassment, detention, seizure, and arrest of their person by Addison's Police Department officers merely for exercise of their First Amendment rights.

125.    Notwithstanding its mentioned duties, Defendant Addison (by and through its policy maker, the Chief of Police) was (upon information and belief) guilty of one or more of the following wrongful acts or omissions in violation of Mr. Sanders' constitutional rights, in that it:

a.    Established an unconstitutional policy, practice or procedure that individuals could not exercise their First Amendment rights by filming or videotaping Addison police department or Addison police officers;

b.    Alternatively failed to establish appropriate policies and procedures to address and protect the proper exercise of the First Amendment rights by individual citizens;

c.    Failed to establish adequate policies and procedures regarding whether a person can be detained, seized, and arrested merely for failing to provide his identification;

d.    Failed to adequately train and supervise its police officers regarding the foregoing; and

e.    Upon information and belief, at the time of the events in question, Defendant Addison had failed to give its officers appropriate policies, rules and limitations on the wrongful interference with the exercise of the First Amendment rights of a person in order to give Addison and its officers unfettered authority and "plausible denial" in the event that the unreasonable and unlawful demand to see the identification of a person was questioned.

Plaintiff's Complaint (Dkt 17, pp. 15-17, ll. 120-127).

These claims arise out of the actions of the individual Defendants violating Plaintiff's constitutional rights. Facts were plead to support such claims including: Defendants harassing Plaintiff for videotaping the police; Defendants seizing Plaintiff without reasonable suspicion; Defendant Bagley informing Plaintiff that it was a result of a "policy"; Defendant Bagley telling Plaintiff he would be arrested if he did not identify himself (even though the Supreme Court held long ago that was not legal in Texas) - all of which violate Plaintiff's constitutional rights pursuant to clearly established law as explained herein. The allegations include an allegation that the City and its policy maker acted with deliberate indifference.  A majority of the claims are based on allegations of failure to have policies, and Plaintiff would obviously not be able to name or identify a specific policy that does not exist.

## VI. The Individual Defendants are Not Entitled to Qualified Immunity and the Court does Not need to Order Plaintiff to Reply Pursuant to Fed. R. Civ. Proc. 7(a)

"The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011))." As the text makes clear, "reasonableness" is "the ultimate touchstone of the Fourth Amendment." *Fernandez v. California* , 134 S.Ct.1126, 1132, 188 L.Ed.2d 25 (2014) (internal quotation marks omitted); *see also New Jersey v. T.L.O* ., 469 U.S.325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) ("[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable . . . ." ); *Carroll v.United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed.543, T.D. 3686 (1925) ("The Fourth Amendment is to be construed in light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens.")."

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015).

Plaintiff has plead facts that show that Defendants violated Plaintiff's Constitutional rights under the First Amendment to videotape activities of the police subject to reasonable time,

place, and manner restrictions. Further the right to videotape the activities of the police under the First Amendment was "clearly established" at the time of the challenged conduct. (paragraph IV. A., pp. 5-7 and Addendum A).

Further, Plaintiff has plead facts that show that Defendants' violated Plaintiff's Constitutional right to free from unreasonable seizure under the Fourth Amendment and the rights with regard to Plaintiff's Fourth Amendment claims were "clearly established" at the time of the challenged conduct. Defendants' additional new facts plead in Defendants' Motion To Dismiss do not meet Defendants' burden to show specific and articulable objective facts that establish under the totality of the circumstances the reasonableness of Defendants' actions in seizing Plaintiff, and as a result, Defendants' Motion should be denied with regard to claims of qualified immunity,[7] and the Court does not need to render any further order pursuant to Federal Rule of Civil Procedure 7 with regard to Defendants' allegations. (paragraph IV. B., pp. 7-14). Further, Plaintiff prays that the Court now open discovery as to all issues.

### VII. Plaintiff's Alternative Conditional Motion to Conduct Discovery and Amend

In the event that the Court determines that it might grant all or part of Defendants' Motion To Dismiss, Plaintiff requests that prior to any such dismissal, the Court review the videotape of the incident, if the Court finds it helpful, and Plaintiff be allowed to conduct discovery as to qualified immunity (if such be necessary) and as to the policies of the Town of Addison and be granted leave to amend his lawsuit in accordance with what the discovery reveals and in accordance with findings of the Court. Unless an opposing party can show

---

[7] Defendants did not mention or move to dismiss Plaintiff's declaratory judgment action, and, if the Court finds that the Defendants are entitled to qualified immunity, Plaintiff's declaratory judgment action should remain pending. *Hydrick v. Hunter*, 669 F.3d 937, 939, 940 (9th Cir. 2012) ("Qualified immunity is only an immunity from a suit for money damages [under 42 U.S.C. §1983], and does not provide immunity from a suit seeking declaratory or injunctive relief.").

prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Unless there is substantial reason to deny leave to amend, the discretion of the trial court is not broad enough to permit denial. *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597, 598 (5th Cir. 1981).

## VIII. Conclusion

Plaintiff has plead sufficient facts to establish plausible claims for violations of his clearly established Constitutional rights under the First and Fourth amendments; the individual Defendants are not entitled to qualified immunity because they have not met their burden of showing specific and articulable facts that support the reasonableness of the suspicion to seize Plaintiff; Plaintiff has adequately shown that the City Ordinance of the Town of Addison names the Police Chief as a policy maker; and Plaintiff has alleged viable claims against the Town of Addison.

Wherefore, Plaintiff prays that the Court deny Defendants' Motion, lift the order staying discovery, and, in the alternative, grant Plaintiff leave to conduct limited discovery and amend his pleadings.

      s/*Kervyn B. Altaffer, Jr.*
KERVYN B. ALTAFFER, JR.
State Bar No. 01116575
ALTAFFER & CHEN PLLC
4054 McKinney Ave., Ste. 310
Dallas, TX  75204
Tel (972) 234-3633
Fax (972) 947-3663
kervyn@altafferlaw.com

ATTORNEY FOR PLAINTIFF