IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRETT MICHAEL SANDERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-2782-D |
| VS. | § | |
| | § | |
| LIEUTENANT MIKE VINCENT, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Brett Michael Sanders ("Sanders")—who was attempting to videotape members of the Addison Police Department—brings this action under 42 U.S.C. § 1983 against defendants Lieutenant Mike Vincent ("Lt. Vincent"), Officer T. Bagley ("Officer Bagley"), Officer B. Jones ("Officer Jones"), and the Town of Addison, alleging that they violated his First, Fourth, and Fourteenth Amendment rights. Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), contending that Sanders has failed to state a claim on which relief can be granted and that the defendants sued in their individual capacities are entitled to qualified immunity. Alternatively, defendants move the court to require that Sanders file a Rule 7(a) reply. For the following reasons, the court grants defendants' motion to dismiss Sanders' claims against the Town of Addison; grants in part and denies in part defendants' motion to dismiss based on qualified immunity; denies (in part as moot, and in part on the merits) defendants' motion to dismiss Sanders' claims against the individual defendants for failure to state a claim; and denies defendants' alternative motion to require Sanders to file

a Rule 7(a) reply.

I

On June 25, 2015, at approximately 12:30 p.m., Sanders set up his personal video camera on a tripod on the sidewalk across the street from the Addison Police Department in order to videotape police cars as they left the parking lot.[1]  Sanders alleges that photography and videography were hobbies, and that he had decided to audit police use of seat belts with his video camera.  According to Sanders' first amended complaint ("amended complaint"), he was standing in plain view wearing shorts, a T-shirt, and a cap, and he had camera equipment in a backpack on his back.  Sanders also had an unloaded pre-1899 black powder pistol in a holster in plain view on the outside of his clothing, and his T-shirt was tucked inside the holster so that the pistol could be seen.  Sanders alleges that he was exercising his clearly established First Amendment rights to observe and videotape the routine activities of the Addison Police Department.

While Sanders was videotaping the Addison Police Department, Officer Bagley approached him and asked him for identification, but Sanders refused.  Officer Bagley then explained to Sanders that he was under detention; that his videotaping the police department

---

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes Sanders' first amended complaint in the light most favorable to him, accepts all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

was making the officers "nervous" because they did not know if Sanders was plotting "to do something to the police department or something like that," Am. Compl. ¶¶ 52, 54; and that videotaping the police department was "suspicious activity," *id.* ¶ 65, and "violated a policy," *id.* ¶ 67. Sanders still refused to provide identification to Officer Bagley. Instead, he reached for his cell phone so that he could connect his camera to the Internet to broadcast Officer Bagley's actions. Officer Bagley asked Sanders not to use his cell phone, stating, "I don't know that you're calling somebody over here to do something to me." *Id.* ¶ 85. Sanders responded that he had no "ill will," and he continued to attempt to connect his camera to the Internet with his cell phone. *Id.* ¶ 88.

According to the amended complaint, instead of ordering Sanders not to use his cell phone or telling Sanders that, if he used his cell phone, Officer Bagley would be forced to use violence against him, Officer Bagley suddenly performed a leg sweep and took Sanders to the ground, knocking Sanders' cell phone out of his grasp and injuring Sanders' leg.[2] Officer Bagley then got on top of Sanders, handcuffed him, and called for backup. After Lt. Vincent and Officer Jones arrived at the scene, Sanders was kept in handcuffs for approximately 20 minutes.

Sanders brings this lawsuit under 42 U.S.C. § 1983, alleging that Officer Bagley, Lt. Vincent, and Officer Jones, all in their individual capacities, and the Town of Addison violated his First, Fourth, and Fourteenth Amendment rights. Defendants move to dismiss

---

[2]Sanders alleges that, at the time Officer Bagley performed the leg sweep, he had not observed that Sanders was openly carrying the unloaded pistol.

the amended complaint under Rule 12(b)(6), contending that Sanders has failed to state a claim on which relief can be granted and that the individual officers are entitled to qualified immunity. Alternatively, they request that Sanders be required to file a Rule 7(a) reply. Sanders opposes defendants' motion but requests leave to conduct discovery and to amend his amended complaint if the court decides that it might grant all or part of defendants' motion.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendants' motion, Sanders' amended complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*,

556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U. S. at 555).

III

The court begins by considering Sanders' § 1983 claim against the Town of Addison.

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right was inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."  *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

The first element requires that Sanders adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that

is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id*. at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id*. (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Sanders must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist*., 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit

recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Sanders adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Sanders therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

B

Defendants move the court to dismiss Sanders' § 1983 claims asserted against the Town of Addison on the ground that he has failed to allege facts supporting the existence of an official custom or policy.

"'Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *Pogue v. City of Dallas*, 2014 WL 3844675, at *3 (N.D. Tex. Aug. 4, 2014) (Boyle, J.) (quoting *Piotrowski*, 237 F.3d at 579).   A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).   "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)).   "'Boiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at *2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994)).

Sanders alleges that the Town of Addison had a policy, practice, or procedure "that individuals could not exercise their First Amendment rights by filming or videotaping

Addison police department or Addison police officers," Am. Compl. ¶ 125; that, alternatively, the Town of Addison "failed to establish appropriate policies and procedures to address and protect the proper exercise of the First Amendment rights by individual citizens," *id.*; that the Town of Addison failed to establish adequate policies and procedures regarding whether a person can be detained, seized, and arrested merely for failing to provide his identification; that the Town of Addison failed to adequately train and supervise its police officers; and that

> at the time of the events in question, Defendant Addison had failed to give its officers appropriate policies, rules and limitations on the wrongful interference with the exercise of the First Amendment rights of a person in order to give Addison and its officers unfettered authority and "plausible denial" in the event that the unreasonable and unlawful demand to see the identification of a person was questioned,

*id.* In his response brief, Sanders contends that he

> was informed by Defendant Officer Bagley that what [he] was doing in videotaping the police activities was violating a "policy that he should not be doing it." Such a policy would be per se unconstitutional. Plaintiff and his counsel could not locate any such policy on the website of the Town of Addison or the Addison Police Department. If the Addison Police Department does have such a policy as stated by Officer Bagley, it could fit into any[ ]one of the theories of liability alleged by Plaintiff against the Town of Addison. If the Town of Addison does not have such a policy in the police department, then Plaintiff's alternative pleadings that Addison lacks such a policy . . . would be a valid claim.

P. Br. 19.[3]

These conclusory allegations are insufficient to support a reasonable inference that there existed an official city policy or custom that led to the violation of Sanders' constitutional rights.  First, Officer Bagley's alleged statement that "[r]ight now what you are doing is violating a policy that you should not be doing this okay," Am. Compl. ¶ 67, is insufficient to plausibly allege that the Town of Addison actually had a policy against videotaping police activities.  Second, even assuming that all of the facts alleged in the amended complaint are true, Sanders has alleged only that a single episode occurred in which Officer Bagley, Officer Jones, and Lt. Vincent violated his constitutional rights.  *See Renfro*, 27 F.Supp.2d at 717.  Sanders does not allege that there was any prior instance in which an Addison police officer prohibited the videotaping of police activities, interfered with individual citizens' exercise of their First Amendment rights, or arrested individuals "merely for failing to provide . . . identification."  Am. Compl. ¶ 125.  The court is therefore unable to draw the reasonable inference that there was a widespread practice that was so common and well-settled as to constitute a custom that fairly represented municipal policy.  Nor does he allege any facts that enable the court to draw the reasonable inference that Addison police officers received insufficient training.  "A mere allegation that a custom or policy exists, without any factual assertions to support such a claim, is no more than a formulaic recitation

---

[3]On February 5, 2016 Sanders filed an amended response and brief in response to defendants' motion to dismiss.  All citations to "P. Br." are to Sanders' February 5, 2016 amended response and brief.

of the elements of a § 1983 claim and is insufficient to state a claim for relief." *Pinedo v. City of Dallas, Tex.*, 2015 WL 221085, at *6 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.). Without factual allegations that are sufficient to support a reasonable inference that such official policies or customs exist, Sanders' amended complaint fails to state a plausible § 1983 claim against the Town of Addison, and defendants' motion to dismiss must be granted.[4]

IV

The court turns next to Sanders' § 1983 claims against Officer Bagley, Officer Jones, and Lt. Vincent in their individual capacities. Defendants move to dismiss these claims on the basis of qualified immunity.[5]

_____

[4]Because the court is granting defendants' motion to dismiss Sanders' § 1983 claim asserted against the Town of Addison on the basis that Sanders has failed to plead an official policy or custom, it need not address defendants' contention that Sanders has failed to identify a policymaker. And the court addresses defendants' contention that Sanders has failed to plausibly allege a constitutional violation only in the context of its qualified immunity analysis.

[5]Although defendants brief their arguments in the context of their contention that Sanders has failed to state a claim on which relief can be granted, the court concludes that it should first address whether defendants are entitled to qualified immunity. This is because "[q]ualified immunity . . . should be addressed by a district court in the early stages of litigation." *Murray v. Earle*, 2008 WL 1744257, at *4 (5th Cir. Apr. 11, 2008) (per curiam) (unpublished opinion) (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)). "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)). In this circuit, it is established that "[d]iscovery . . . must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs*., 41 F.3d 991, 994 (5th Cir. 1995). If the individual defendants are entitled to qualified immunity, the court must dismiss Sanders' claims against

A

Qualified immunity jurisprudence is well settled. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the

them without reaching the other grounds of defendants' motion. If defendants are entitled to qualified immunity as to some but not all claims, the court can narrow its analysis of the motion to dismiss to the claims for which defendants are not entitled to qualified immunity.

officer's conduct violated a constitutional right? This must be the initial inquiry.")).[6] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996)

---

[6] *Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*. at 236. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242.

(citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).  Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a).  *Schultea*, 47 F.3d at 1433.  "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."  *Id*.  "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury."  *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).  The case should not be allowed to proceed unless plaintiff can assert specific facts that, if true, would overcome the defense.  *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law.");  *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").  The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist."  *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

- 14 -

B

Sanders alleges that Officer Bagley violated his Fourth Amendment[7] rights by unlawfully detaining him and demanding to see his identification without reasonable suspicion to believe that he was engaged in, or had engaged in, any criminal conduct, and that Lt. Vincent and Officer Jones violated his Fourth Amendment rights by continuing the unlawful detention in public view, and in broad daylight, for another 20 minutes, without reasonable suspicion to believe he had engaged in any criminal conduct.

1

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. But "[n]ot every encounter between a citizen and a police officer implicates the Fourth Amendment." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002) (citing *INS v. Delgado*, 466 U.S. 210, 215 (1984)).

---

[7]Sanders also alleges that Officer Bagley's conduct violated his Fourteenth Amendment rights. *See* Am. Compl. ¶ 117. The Supreme Court has held, however, that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). As explained below, the Fourth Amendment protects against "unreasonable searches and seizures" by the government. Because the Fourth Amendment protects against the type of conduct Sanders alleges in the amended complaint, his claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) ("To the extent that [plaintiff] seeks to assert a distinct cause of action under substantive due process, that claim must fail. . . . Here, [plaintiff's] claims are rooted in procedural due process, the Equal Protection Clause, and the First Amendment. Those provisions are our exclusive guideposts.").

> The Supreme Court has identified three tiers of citizen-police contact for purposes of fourth amendment analysis. The first tier, communication between police and citizens, involves no coercion or detention and does not implicate the fourth amendment. An investigatory stop, at the second level of contact, is a brief seizure that must be supported by reasonable suspicion, that is "specific and articulable facts, which taken together with rational inferences from these facts reasonably warrant an intrusion." Finally, a full scale arrest must be supported by probable cause.

*United States v. Zukas*, 843 F.2d 179, 181-82 (5th Cir. 1988) (citations omitted). The second sort of police encounter is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968).[8]

> Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place. . . . The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the

---

[8]Although Sanders alleges in his amended complaint that Officer Bagley violated his Fourth Amendment rights by "*arresting* Mr. Sanders by placing handcuffs on him without probable cause," Am. Compl. ¶ 117 (c) (emphasis added), and describes the incident throughout the amended complaint as an "arrest," the Fifth Circuit has held that "[h]andcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause." *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000). Defendants characterize the entire series of events as an investigatory detention, *see* Ds. Br. 17 ("With Plaintiff having a pistol on his person, and wearing a backpack containing unknown items, it was certainly reasonable to handcuff him during the *investigatory detention*." (emphasis added)). Because Sanders does not plausibly allege or argue in his brief that the actions of Officer Bagley, Officer Jones, or Lt. Vincent constituted a "arrest" requiring probable cause, the court will treat the incident as an investigatory detention, which must be supported by reasonable suspicion, not probable cause.

search and seizure.   In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other.  In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice.   It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.

*United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotation marks and citations omitted)

The Supreme Court has long held that the "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).  "Reasonableness, measured 'in objective terms by examining the totality of the circumstances,' 'eschew[s] bright-line rules, instead emphasizing the fact-specific nature of the inquiry.'" *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc) (quoting *Robinette*, 519 U.S. at 39).  "[T]he Supreme Court has emphasized that courts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (citations and internal quotation marks omitted).

2

Defendants contend that Officer Bagley's initial contact with, and investigatory detention of, Sanders was supported by reasonable suspicion, and that Sanders was detained for a reasonable length of time.  The events in question took place in the wake of recent attacks on a city meeting facility and police headquarters in the neighboring cities of Dallas

and Garland[9]; an observant officer noticed that Sanders was videotaping officers and their

activities in the parking lot used by the officers at the Addison Police Department

Headquarters; Sanders alleges that he was wearing a handgun intentionally displayed in a

way so that it was visible to all; and Sanders was detained for at most 20 minutes as an

investigation continued.[10]

---

[9]Sanders was arrested on June 25, 2015.  On May 4, 2015 (seven weeks before Sanders' arrest) two individuals fired shots at security officers at the entrance to a city building in Garland, Texas.  On June 13, 2015 (12 days before Sanders' arrest), an individual opened fire on the entrance to the Dallas Police Department headquarters and left a package of pipe bombs in the parking lot.  Defendants ask the court to take judicial notice of these two events, which they maintain were widely known in the community.  Because, even in the absence of these facts, the court would conclude that Officer Bagley had reasonable suspicion to detain Sanders, the court declines to take judicial notice of the May 4, 2015 and June 13, 2015 events in Garland and Dallas.

[10]Defendants allege that "at about [the time that he was handcuffed]," Sanders' handgun was removed from him and the officers examined it, "trying to determine if it was operable, was loaded, [and] how it could be loaded or unloaded." Ds. Br. 4.  Defendants also maintain that "[w]hile Plaintiff complains about being held for a total of about 20 minutes, he fails to tell the Court that when Officers at the scene realized that his gun might be an exempt pre-1899 black powder gun, and that it was not loaded, and that they eventually determined he did not appear to be an immediate threat of harm, he was released at the scene and all of his property was returned to him." *Id*. at 4-5.  Sanders admits in his response brief that these facts are true:

> Based upon Defendants' Motion To Dismiss and Defendants' Answer, including the "new facts" alleged by Defendants in both (*which Plaintiff does admit are true*), Defendants have not met their burden to show specific and articulable objective facts that support a reasonable suspicion, at the inception of Plaintiff's initial seizure, that Plaintiff had committed, was committing, or was about to commit a crime.

P. Br. 17 (emphasis added).

Sanders argues in response that he has plausibly alleged that, at the inception of his seizure, he was located in plain view, he was not interfering with traffic or police activities, and Officer Bagley was unaware that he was openly carrying a pistol.  Sanders contends that defendants have not shown that there was any report of criminal activity; that they had any particular reason to think that Sanders' videotaping the Police Department was a crime; that Sanders matched the description of anyone sought by the police; that they had a "hunch" that Sanders might be involved in criminal activity and then observed him for a sufficient amount of time to determine that criminal activity indeed reasonably appeared to be afoot; that Sanders made any suspicious movements or verbally threatened them; that Sanders was located in a "high crime" area; that Sanders' activities were being conducted at an unusual time or place or manner; that Sanders attempted to flee when Officer Bagley approached him or told him he was detained; or that Sanders appeared unusually nervous.  Regarding defendants' evidence of crimes committed and directed at a police station in Dallas and a city building in Garland, Sanders argues that defendants have not shown any facts that would connect these crimes to Sanders.  Finally, Sanders argues that, to the extent defendants imply that his refusal to identify himself constituted a refusal to cooperate, Texas law does not require a person to identify himself unless and until after he has been lawfully arrested.

3

The court concludes that Sanders has not plausibly alleged that Officer Bagley violated Sanders' Fourth Amendment rights when he initially detained Sanders for investigation.  As explained above, "police officers may stop and briefly detain an individual

for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).  Reasonable suspicion requires "the police officer . . . to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009) (quoting *Terry*, 392 U.S. at 21).  This standard "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (citation omitted).  The court assesses the reasonableness of the stop "by conducting a fact-intensive, totality-of-the-circumstances inquiry," *id.*, and considers only the "information available to the officer at the time of the decision to stop a person," *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992).

At the time Officer Bagley informed Sanders that he was "under detention," Am. Compl. ¶ 29, he had the following information available to him: Sanders, wearing a backpack containing unidentified items, was videotaping the parking lot of the Addison Police Department without having requested permission to do so, informed the police department of his reasons for doing so, or even notified the police department that he would be doing so, and, when Officer Bagley approached Sanders, Sanders refused to tell Officer Bagley why he was videotaping the police department and refused to identify himself or provide Officer Bagley with identification.[11]  Under the totality-of-the-circumstances, these facts are

---

[11]Sanders argues that, under *Brown v. Texas*, 443 U.S. 47 (1979), he could not be subjected to a seizure or a continuation of a seizure for failing to cooperate by refusing to

sufficient to create a reasonable suspicion that criminal activity is afoot.

In a case with nearly identical facts, another member of this court held that the detaining officers were entitled to qualified immunity because

> [t]here is nothing in the case law to suggest that police officers are constitutionally prohibited from making reasonable inquiry, and taking reasonable steps, to identify an unknown person who is seen videotaping their place of work and the place where they come and go in their private vehicles.  In this day and age, the risk to public officials, particularly police officers, is such that a police officer could reasonably believe that he had the right to require plaintiff to identify himself after plaintiff was observed videotaping the police station and to take appropriate action in response to plaintiff's refusal to identify himself.

*Terry v. Driver*, 2016 WL 722154, at *3 (N.D. Tex. Feb. 19, 2016) (McBryde, J.).  The court agrees and holds that Sanders has failed to plausibly allege that Officer Bagley violated his Fourth Amendment rights when he initially detained Sanders for an investigation.  To the extent Sanders bases his § 1983 claim on these allegations against Officer Bagley, the court grants defendants' motion to dismiss based on qualified immunity.

4

To the extent Sanders alleges that Lt. Vincent and Officer Jones violated his Fourth Amendment rights by "continuing the unlawful detention, seizure and arrest in public view in broad daylight for another twenty minutes," Am. Compl. ¶ 117, the court concludes that

---

identify himself.  In *Brown* the Supreme Court held that a state cannot make it a crime to refuse to provide identification on demand in the absence of reasonable suspicion.  *Brown*, 443 U.S. at 52-53.  But *Brown* is inapplicable in this case, where the detaining officer had reasonable suspicion, based on clearly articulable facts, that criminal activity (not merely the failure to provide identification) was afoot.

Lt. Vincent and Officer Jones are also entitled to qualified immunity.  In his brief, Sanders offers the following in support of his Fourth Amendment claim against Lt. Vincent and Officer Jones:

> Due to the fact that Plaintiff's seizure at the inception was not based upon reasonable suspicion, any continued seizure, even based upon facts discovered after the inception such as possession by Plaintiff of a (legal) weapon, would be illegal. Defendants Vincent and Jones were not mere bystanders, but participated in the illegal seizure by continuing to keep Plaintiff handcuffed and physically hold Plaintiff after Defendant Bagley left the scene, and as such both are also liable for the continuation of the illegal seizure of Plaintiff.

P. Br. 18-19 (citations omitted).  Thus Sanders' claim against Lt. Vincent and Officer Jones appears to be based entirely on the alleged illegality of the initial seizure.  Because the court concludes above that Sanders has not plausibly alleged that his initial seizure was unsupported by reasonable suspicion, and because Sanders pleads no other basis for his claim that Lt. Vincent and Officer Jones violated his Fourth Amendment rights, the court concludes that Lt. Vincent and Officer Jones are entitled to qualified immunity to the extent Sanders bases his § 1983 claim against them on alleged violations of the Fourth Amendment.

## C

Sanders alleges that Officer Bagley used excessive force, in violation of his Fourth Amendment right against unreasonable seizure, when he took Sanders to the ground using a leg sweep.[12]

---

[12]Sanders does not allege that Officer Bagley's use of handcuffs during his arrest amounted to unreasonable force.

- 22 -

1

Defendants contend that the minimal amount of force that Officer Bagley used on Sanders was lawful.  They cite allegations in the amended complaint that Officer Bagley repeatedly told Sanders not to reach for the object that Sanders claimed was going to be a cell phone, and repeatedly ordered Sanders not to use the cell phone.  Defendants contend that, when Sanders refused to comply with Officer Bagley's instructions, Officer Bagley used reasonable force to put Sanders on the ground to prepare him for handcuffing, and that "[e]ven under the facts alleged . . . a reasonable Officer could suspect that the 'cell phone' Plaintiff was reaching for could turn out to be another weapon," and that even after Sanders "gained possession of his cell phone, Officer Bagley had a right to reasonably prevent Plaintiff from using the cell phone to either summon others to the scene or to potentially use the cell phone to remotely activate a harmful device."  Ds. Br. 18.

Sanders responds that, at the time Officer Bagley took him to the ground with a leg sweep, he had already been seized.  He maintains that no further force was necessary because he did not commit any aggressive or violent act; did not make any threats; did not attempt to flee; did not act nervous; did not commit any type of criminal activity; was never told that he was suspected of any crime; was told by Officer Bagley that he would be arrested if he did not identify himself (even though failure to identify was not a crime); was not warned in any manner or requested to allow himself to be handcuffed; and was injured by the takedown.

- 23 -

2

"The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens." *Colston v. Barnhart*, 130 F.3d 96 (5th Cir. 1997). "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

The court must accepts as true Sanders' allegation that his leg was injured when he fell as a result of Officer Bagley's performing a leg sweep.  The relevant question thus becomes "whether the force was 'clearly excessive' or 'clearly unreasonable.'"  *Id.*  In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).  This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Graham*, 490

U.S. at 397. "The calculus of reasonableness must embody allowance for the fact that police

officers are often forced to make split-second judgments—in circumstances that are tense,

uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

situation." *Id.* at 396-97.

Considering the *Graham* factors and judging the alleged use of force from "the

perspective of a reasonable officer on the scene," *Rockwell*, 664 F.3d at 991, the court

concludes that, viewed favorably to Sanders and accepted as true, the well-pleaded

allegations in the amended complaint show that Officer Bagley used excessive force when

he performed a leg sweep to take Sanders down. The facts pleaded in the amended complaint

show that Sanders did not verbally or physically threaten Officer Bagley; he was not

attempting to flee; he was not resisting arrest; he was not given the opportunity to submit

voluntarily to Officer Bagley's control; and he was never warned that if he did not submit

to Officer Bagley's orders, physical force would be used against him. Even in light of

Sanders' admitted failure to cooperate with Officer Bagley's requests during the

investigatory detention, the facts alleged show that there was no need for force. *See, e.g.*

*Backe v. City of Galveston, Tex.*, 2014 WL 794025, at *17 (S.D. Tex. Feb. 27, 2014) (holding

that it was objectively unreasonable under clearly established law for police officer to use

forcible takedown without giving suspect any opportunity to submit voluntarily to officers'

control). Accepting these facts as true, the amount of force from the leg sweep would be

disproportionate to the lack of need for force. Likewise, Sanders' alleged non-resistance and

lack of physical aggression or verbal threats—including Sanders' allegation that he twice informed Officer Bagley that he "ha[d] no ill will," Am. Compl. ¶¶ 86, 88—would make any perceived threat that he posed unreasonable.

3

Having concluded that Sanders has plausibly pleaded that Officer Bagley used excessive force by performing a leg sweep to take Sanders down, the court next considers whether it was clearly established at the time of the incident that, under the circumstances alleged, the use of such force violated the Fourth Amendment. As discussed above, viewed favorably to Sanders and accepted as true, the well-pleaded allegations in the amended complaint show that Sanders posed little or no threat to Officer Bagley, and that the use of force was not justified under the circumstances. At the time of Sanders' arrest,

> the law was clearly established that although the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee.

*Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (citations and internal quotation marks omitted). Here, as Sanders has pleaded his account of the events, he was not resisting arrest or attempting to flee when Officer Bagley performed the leg sweep to take him down. While the "Fourth Amendment's reasonableness test is 'not capable of precise definition or mechanical application,'" *id.* (citations omitted), the test is clear enough that Officer Bagley should have known that he could not constitutionally use a leg sweep to forcibly take Sanders

down when he never gave Sanders the opportunity to voluntarily submit to his control, Sanders was not attempting to flee or resisting arrest, and Sanders did not verbally or physically threaten Officer Bagley's physical safety.  The court thus concludes that Officer Bagley is not entitled to qualified immunity at the pleading stage with respect to Sanders' excessive force claim.

## D

Sanders alleges that Lt. Vincent, Officer Bagley, and Officer Jones deprived him of his "constitutional rights under the First Amendment to videotape the activities of the Addison Police Department by harassing, detaining, seizing and arresting" him.  Am. Compl. ¶ 117(a).  Assuming *arguendo* that defendants' actions violated Sanders' First Amendment rights, defendants are nonetheless entitled to qualified immunity to the extent Sanders bases his § 1983 claim on these allegations because it was not clearly established at the time of the incident that the First Amendment protects an individual's right to videotape police activities.

### 1

Under the second prong of the qualified immunity analysis,[13] courts consider "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident."  *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *see also Wood v. Moss*, ___U.S.___, 134 S.Ct. 2056, 2067 (2014) ("The 'dispositive inquiry,' we have said, 'is whether it would have been clear to a reasonable officer' in the [defendants'] position

---

[13]The court may consider the second *Saucier* prong first.  *Pearson*, 555 U.S. at 236.

- 27 -

'that their conduct was unlawful in the situation they confronted.'" (brackets omitted) (quoting *Saucier*, 533 U.S. at 202)); *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (per curiam) ("The court must first identify the relevant clearly established law [and t]hen . . . determine whether the defendant's actions were objectively reasonable." (citing *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998))). To make this determination, the court must

> ask whether the law so clearly and unambiguously prohibited [the defendant's] conduct that *every* reasonable official would understand that what he is doing violates the law.  To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (brackets, footnotes, and internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 742 (2011)).  While "a case directly on point" is not required for the court to conclude that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.  Moreover, a court may not "'define clearly established law at a high level of generality' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard*, ___ U.S. ___, 134 S.Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 563 U.S. at 742).  "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the

conduct then at issue violated constitutional rights.'"  *Kinney v. Weaver*, 367 F.3d 337, 350

(5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

2

Sanders has failed to point to any controlling authority that would establish that he had

a constitutionally-protected First Amendment right to videotape police activity.  Nor is there

a "robust consensus of persuasive authority," *Morgan*, 659 F.3d at 371-72, that such activity

is protected.  As *Turner* explains:

> The Supreme Court and Fifth Circuit have not addressed
> whether or not there is a First Amendment right to videotape
> police activities.  Circuit courts that have addressed the issue in
> different contexts are split as to whether or not there is a clearly
> established First Amendment right to record the public activities
> of police.  *Compare Gericke v. Begin*, 753 F.3d 1, 9 (1st Cir.
> 2014) (holding that there can be a First Amendment right to film
> a police officer making a traffic stop), *and Smith v. City of
> Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (holding that
> there is a First Amendment right to videotape police activity,
> subject to reasonable time, manner and place restrictions), *with
> Kelly v. Borough of Carlisle*, 622 F.3d 248, 262-63 (3d Cir.
> 2010) (holding that a First Amendment right to videotape police
> officers during a traffic stop was not clearly established), *and
> Szymecki v. Houck*, 353 Fed. App'x 852 (4th Cir. 2010)
> (agreeing with a lower court that there was qualified immunity
> because the asserted right to record police activities on public
> property was not clearly established in the Fourth Circuit).

*Turner*, 2016 WL 722154, at *3.  The court concurs with this analysis, and it has located no

contrary authority that suggests that Sanders' First Amendment rights were clearly

established.  Accordingly, under the second step of the qualified immunity analysis, the court

holds that Lt. Vincent, Officer Jones, and Officer Bagley are entitled to qualified immunity

- 29 -

to the extent Sanders bases his § 1983 claim on defendants' alleged deprivation of his First Amendment rights.

## V

Defendants also move to dismiss Sanders' claims against Officer Bagley, Lt. Vincent, and Officer Jones for failure to state a claim on which relief can be granted. To the extent the court is granting defendants' motion to dismiss based on qualified immunity, the court denies as moot defendants' Rule 12(b)(6) motion based on failure to state a claim. To the extent Sanders' § 1983 claim survives defendants' motion based on qualified immunity—i.e., to the extent Sanders bases his § 1983 claim on Officer Bagley's alleged use of excessive force—the court concludes that Sanders has sufficiently pleaded a constitutional violation. *See supra* § IV(C). Accordingly, the court denies defendants' motion to dismiss Sanders' § 1983 claim for failure to state a claim.

## VI

Defendants move in the alternative to require Sanders to file a Rule 7(a) reply. The court concludes that the complaint is sufficiently detailed to enable the court to address whether Officer Bagley, Lt. Vincent, or Officer Jones is entitled to qualified immunity. The court therefore denies this ground of defendants' motion.

## VII

In his response to defendants' motion to dismiss, Sanders requests the following relief:

> In the event that the Court determines that it might grant all or part of Defendants' Motion To Dismiss, Plaintiff requests that prior to any such dismissal, the Court review the videotape of

- 30 -

> the incident, if the Court finds it helpful, and Plaintiff be
> allowed to conduct discovery as to qualified immunity (if such
> be necessary) and as to the policies of the Town of Addison and
> be granted leave to amend his lawsuit in accordance with what
> the discovery reveals in accordance with findings of the Court.

P. Br. 24. Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead (unless it is clear that the defects are incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal), the court grants Sanders' request that he be allowed to amend his complaint. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). Sanders must file his second amended complaint within 28 days of the date this memorandum opinion and order is filed.

The court denies, however, Sanders' requests that he be permitted to conduct discovery. First, with regard to his request to conduct discovery as to qualified immunity, such discovery should not be permitted until Sanders can satisfy the applicable heightened pleading. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]"). And he does not need discovery to the extent the court holds that

- 31 -

qualified immunity is not available to Officer Bagley on Sanders' excessive force claim.

Second, as for his request that he be permitted to conduct discovery regarding policies of the Town of Addison, Sanders has not demonstrated why he needs discovery to ascertain policies that—assuming they exist—should be determinable from public sources. *See, e.g., Valle*, 613 F.3d at 542 ("[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority.").

\* \* \*

For the foregoing reasons, the court grants defendants' motion to dismiss Sanders' claims against the Town of Addison; grants in part and denies in part defendants' motion to dismiss based on qualified immunity; denies in part as moot, and denies in part on the merits, defendants' motion to dismiss Sanders' claims against the individual defendants for failure to state a claim; and denies defendants' alternative motion to require Sanders to file a Rule 7(a) reply.  The court grants Sanders leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 21, 2016.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE